**Reversed and Rendered, and Majority and Concurring Opinions filed October 15, 2015.**



In The

## Fourteenth Court of Appeals

---

### NO. 14-14-00823-CV

---

**TEXAS TRANSPORTATION COMMISSION AND TED HOUGHTON, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE TEXAS TRANSPORTATION COMMISSION, Appellants**

**V.**

**CITY OF JERSEY VILLAGE, Appellee**

---

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-59338**

---

### M A J O R I T Y   O P I N I O N

The Texas Department of Transportation is constructing additional lanes along U.S. Highway 290, which requires the relocation of utility lines owned by appellee, the City of Jersey Village. At issue in this interlocutory appeal is whether the Department is obligated to reimburse Jersey Village for the costs of

acquiring new easements along which Jersey Village intends to lay replacement utility lines.

Appellant, the Texas Transportation Commission, governs the Department. *See* Tex. Transp. Code Ann. § 201.201 (Vernon 2011).[1] Appellant Ted Houghton was chair of the Texas Transportation Commission when Jersey Village filed its lawsuit in 2012, and was sued in his official capacity. Appellants filed a plea to the jurisdiction based on sovereign immunity, which the trial court denied. Appellants then filed this interlocutory appeal. We reverse the trial court's order and render judgment dismissing the case for lack of jurisdiction.

## BACKGROUND

Appellants, acting through the Texas Department of Transportation, are widening U.S. Highway 290 to include additional lanes. To accommodate the additional lanes, the State must acquire land along the highway and convert it to a public right-of-way.

The improvement project is divided into segments, and the widening in segment six requires the relocation of three utility lines owned and operated by Jersey Village.[2] The improvement project likely will require the relocation of two additional utility lines owned by Jersey Village in segment seven.[3] According to

---

[1] Because the Texas Transportation Commission governs the Texas Department of Transportation, the parties, certain documents, and this opinion occasionally refer to them jointly or interchangeably.

[2] Jersey Village describes the three lines in segment six as "[a]12-inch water line from Jersey Drive to Dillard Drive," "[a] 12-inch water line from Senate Avenue to Security Way," and "[a] 12-inch sewer line from approximately 450 feet east of Hillcrest Drive to Security Way."

[3] The utility lines in segment seven are described as "[t]he continuation of the 12-inch water line east of Jersey Drive" and "[a]n 8-inch sewer line east of Jersey Drive."

Jersey Village, the five utility lines currently run parallel to, but outside of, the existing highway right-of-way in easements allegedly owned by Jersey Village.

Texas Transportation Code section 203.092(a) provides in relevant part that the State shall pay for the relocation of a utility facility if the relocation is required by improvement of any segment of the state highway system and the utility "has a compensable property interest in the land occupied by the facility to be relocated." Tex. Transp. Code Ann. § 203.092(a)(2) (Vernon Supp. 2014). The statute defines the cost of relocation as including "the entire amount paid by the utility properly attributable to the relocation less: (1) any increase in the value of the new facility; (2) the salvage value derived from the old facility; and (3) any other deduction established by regulations for federal cost participation." *Id.* § 203.092(d). Because Jersey Village contends that it has a compensable property interest in its utility easements, it requested the Department to pay for the relocation of its utility lines. As part of its request for the Department to pay relocation expenses, Jersey Village sought reimbursement for the costs to obtain replacement easements in which to place its utility lines, which costs it contends are properly attributable to the relocation.

Jersey Village and the Department entered into negotiations regarding relocation expenses. However, the Department refused to reimburse Jersey Village for costs associated with obtaining replacement easements. Instead, the Department offered Jersey Village the option of relocating its utility lines into the new right-of-way the Department will acquire along the highway. Unsatisfied with this offer, Jersey Village filed the underlying suit against the Commission and Houghton in late 2012.[4]

---

[4] Jersey Village opposes relocation of its water and sewer lines within a proposed, expanded highway right-of-way because it contends that it "currently possesses a compensable

3

In its suit against the Commission and Houghton, Jersey Village pled a single cause of action alleging that the Commission improperly denied reimbursement of utility relocation costs. Specifically, Jersey Village asserted that it is entitled to reimbursement of costs incurred in securing new easements in which to place its utility lines. To that end, Jersey Village requested: (1) a declaration regarding the proper interpretation of Texas Transportation Code sections 203.092(a)(2) and (d); and (2) a declaratory judgment that Jersey Village's city-owned utility easements are compensable property interests, and their replacement therefore constitutes a reimbursable cost which the state "shall" pay pursuant to Section 203.092.

Negotiations continued between the parties, and in June 2014 the Department and Jersey Village entered into an agreement under which the Department agreed to reimburse Jersey Village for the costs incurred in removal and relocation of the water and sewer lines located in segment six. *See* 43 Tex. Admin Code § 21.22 (2004) (Tex. Dep't of Transp., Agreements) (providing that if

property interest in the land occupied by the water and sewer lines," and that, if it were to place its lines in the State's right-of-way, and if the State were to widen the highway in the future and require relocation of the lines, then Jersey Village would not be entitled to reimbursement for those relocation costs because it no longer would have a "compensable property interest in the land occupied by the facility to be relocated." *See* Tex. Transp. Code Ann. § 203.092(a)(2). Jersey Village further contends that, "[a]ccording to TxDOT rules and practices, the City will be required to obtain prior permission from TTC/TxDOT each and every time it needs to access its utility lines for repair, maintenance or replacement, representing an untenable loss of control to immediately address important water supply and public health and safety issues affecting the citizens of Jersey Village."

In response to Jersey Village's first issue, the Commission and Houghton challenge Jersey Village's assertion that it has a compensable property interest in its current public utility easements. In response to Jersey Village's second issue regarding access to utility lines, the Commission and Houghton respond that Texas Department of Transportation regulations require utilities to give **notice** regarding maintenance, and that permission is required only in certain situations that would not apply to Jersey Village. *See* 43 Tex. Admin. Code § 21.37 (2014) (Tex. Dep't of Transp., Design); *id.* § 21.38 (2014) (Tex. Dep't of Transp., Construction and Maintenance).

4

the Texas Department of Transportation requires the relocation of a utility facility as the result of an improvement to a state highway, the utility and the Department "shall negotiate . . . in good faith to reach an agreement on the terms of the relocation"). Pursuant to the agreement, the Department agreed to reimburse Jersey Village for 95.45% of eligible costs, consisting of 100% reimbursement for the utility lines located in public easements and 50% reimbursement for the water line that was not located in an easement. However, the agreement specifically excluded reimbursement for replacement easements.

Still seeking reimbursement for replacement easements, Jersey Village filed a motion for summary judgment in the trial court on its declaratory judgment action in July 2014. The Commission and Houghton responded with an amended plea to the jurisdiction[5] and motion for summary judgment. In their plea to the jurisdiction, the Commission and Houghton asserted that Jersey Village's claims were barred by sovereign immunity and that no exceptions applied to waive that immunity.

The trial court granted summary judgment in favor of Jersey Village on September 24, 2014. The trial court's order stated in part that "[t]he provisions of Texas Transportation Code § 203[.]092 mean that The City of Jersey Village's city-owned utility easements are compensable property interests, and Jersey Village's acquisition[s] of replacement utility easements are among the reimbursement costs for which the state 'shall' pay, pursuant to Section 203.092 of the Texas Transportation Code."

The Commission and Houghton filed a motion requesting the court to reconsider its summary judgment order. The trial court denied the motion by order

---

[5] The Commission and Houghton filed their original plea to the jurisdiction shortly after suit was filed in 2012.

of October 23, 2014. The trial court subsequently signed an order denying the Commission's and Houghton's plea to the jurisdiction and motion for summary judgment on December 3, 2014.

The Commission and Houghton timely appealed from the trial court's three orders, which they assert implicitly and explicitly denied their plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon 2015) (allowing an interlocutory appeal from a trial court order that grants or denies a plea to the jurisdiction by a governmental unit). The Commission and Houghton argue on appeal that Jersey Village's claims are barred by sovereign immunity and, therefore, the trial court lacks jurisdiction. Jersey Village invokes two exceptions to sovereign immunity as the bases for the trial court's jurisdiction: (1) the Uniform Declaratory Judgment Act (UDJA); and (2) the *ultra vires* exception to sovereign immunity. We survey the applicable law, construe Jersey Village's claim, and then address the *ultra vires* exception to sovereign immunity, which we determine is the only relevant exception in this case.

## STANDARD OF REVIEW

We review a trial court's ruling on a plea to the jurisdiction *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). "'[I]f a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised,' even where those facts may implicate the merits of the cause of action." *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009) (quoting *Miranda*, 133 S.W.3d at 227). If the relevant evidence is undisputed or fails to raise a fact question, the trial court rules on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228. If, however, the evidence creates a fact question

6

regarding jurisdiction, the trial court cannot grant the plea, and the fact question will be resolved by the factfinder. *Id.* at 227-28.

The standard of review for a plea to the jurisdiction based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228; *see also Thornton v. Ne. Harris Cty. MUD 1*, 447 S.W.3d 23, 32 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Under this standard, we take as true all evidence favoring the nonmovant and draw all reasonable inferences and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. If the movant presents conclusive proof that the trial court lacks subject matter jurisdiction, then the nonmovant must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the plea will be sustained. *See id.*; *City of Galveston v. Murphy*, No. 14-14-00222-CV, 2015 WL 167178, at *2 (Tex. App.—Houston [14th Dist.] Jan. 13, 2015, pet. filed).

### APPLICABLE LAW

Sovereign immunity protects the State and its political subdivisions from lawsuits for damages unless immunity has been waived by the Legislature. *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011); *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Sovereign immunity from suit deprives a trial court of subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Reata*, 197 S.W.3d at 374; *Miranda*, 133 S.W.3d at 225-26. However, the Texas Supreme Court has recognized that sovereign immunity does not bar a suit in at least two relevant circumstances: (1) when the suit seeks to determine or protect a party's rights against a state official who has acted without legal or statutory authority—commonly referred to as an *ultra vires* claim; or (2) when the suit challenges the validity of a statute. We discuss the applicable law regarding each exception below.

7

## A.     *Ultra Vires* Suits

Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority.[6]  *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *see also Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015) ("[A]n action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars."). This is because suits to compel state officers to act within their official capacity do not attempt to subject the State to liability.  *IT–Davy*, 74 S.W.3d at 855. Accordingly, such a claim must be brought against the state actor in the actor's official capacity because the State and its subdivisions remain immune.  *Emmett*, 459 S.W.3d at 587.

To fall within this *ultra vires* exception to sovereign immunity, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).  Even though an *ultra vires* suit against a state officer is not barred by sovereign immunity, relief for *ultra vires* claims is restricted because the suit is for all practical purposes a suit against the State, and the State is generally immune from claims for retrospective monetary relief.  *Emmett*, 459 S.W.3d at 587.   However, "claims for prospective payment in accord with a statutory obligation are not necessarily barred." *Id.*

---

[6] We have not identified any case or statutory law which would prevent a municipality from seeking declaratory relief against a state official allegedly acting without legal authority.

**B.     Suits Challenging The Validity Of A Statute**

The UDJA generally permits a person who is interested in a deed, or whose rights, status, or other legal relations are affected by a statute, to obtain a declaration of rights, status, or other legal relations thereunder.  Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (Vernon 2015); *Sawyer Trust*, 354 S.W.3d at 388.  The UDJA, however, does not enlarge a trial court's jurisdiction, and a request for declaratory relief does not alter a suit's underlying nature.  *Heinrich*, 284 S.W.3d at 370; *see also IT–Davy*, 74 S.W.3d at 856 (noting that a party cannot circumvent the State's sovereign immunity by characterizing a suit for money damages as a declaratory judgment claim).  "The central test for determining jurisdiction is whether the 'real substance' of the plaintiff's claims falls within the scope of a waiver of immunity from suit."  *Sawyer Trust*, 354 S.W.3d at 389.  "While the [U]DJA waives sovereign immunity for certain claims, it is not a general waiver of sovereign immunity."  *Id.* at 388.  "Consequently, sovereign immunity will bar an otherwise proper [U]DJA claim that has the effect of establishing a right to relief against the State for which the Legislature has not waived sovereign immunity."  *Id.*

However, "the state may be a proper party to a declaratory judgment action that challenges the validity of a statute."  *Tex. Dept. of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011); *see also Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633, 634 n.4 (Tex. 2010) ("[W]hen the *validity* of ordinances or statutes is challenged, the [U]DJA waives immunity to the extent it requires relevant governmental entities be made parties.") (emphasis in original); *City of McKinney v. Hank's Rest. Grp., L.P.*, 412 S.W.3d 102, 112 (Tex. App.—Dallas 2013, no pet.) ("To summarize, the Declaratory Judgments Act waives governmental immunity against claims that a statute or ordinance is invalid.  The

Act does not waive immunity against claims seeking a declaration of the claimant's statutory rights or an interpretation of an ordinance.") (citation omitted).[7]

### ANALYSIS

Despite Jersey Village's contentions that it asserts only a statutory construction claim, we determine that Jersey Village pled and may pursue only an *ultra vires* claim for the repayment of relocation costs associated with the purchase of replacement easements.

## I.    Jersey Village's Claim

In its sole cause of action presented in the court below, Jersey Village contended that "TTC/TxDOT improperly denied reimbursement of water utility relocation costs." Within that claim, Jersey Village asserted that the Commission's refusal to reimburse Jersey Village for costs associated with acquiring replacement easements was a "violation of TEX. TRANSPORTATION CODE § 203.092 and Article 1, Section 17 of the Texas Constitution."[8]  Jersey Village also requested a declaratory judgment that "Jersey Village's city-owned utility easements are compensable property interests, and Jersey Village's acquisition of replacement utility easements are among the reimbursement costs for which the state 'shall' pay, pursuant to Section 203.092 of the Texas Transportation Code."

---

[7] Jersey Village asserts that the UDJA's sovereign immunity waiver is not limited to suits challenging the validity of statutes; it argues that the UDJA waives the State's sovereign immunity for all statutory construction claims.  The Commission and Houghton argue that "the UDJA waives sovereign immunity only for actions seeking to invalidate an ordinance, statute, or franchise."  We need not determine the full scope of the UDJA's sovereign immunity waiver because, as we conclude below, Jersey Village pleaded only an *ultra vires* claim.

[8] Jersey Village concedes on appeal that it did not seek declaratory judgment under Article 1, Section 17 of the Texas Constitution and did not include a claim for inverse condemnation.

10

Under these circumstances, Jersey Village's "request for declaratory relief" is nothing more than an *ultra vires* claim contending that the Commission, a state agency, and Houghton, a state official, have refused to perform a ministerial act by refusing to pay certain relocation costs that Jersey Village contends are owed pursuant to section 203.092. *See Sefzik*, 355 S.W.3d at 622 n.2 ("Although Sefzik refused to apply the *ultra vires* label to his suit below, that is the underlying nature of his claim. The relief he seeks—a declaration that he is entitled to a hearing—is directly related to whether [a state official] acted outside the scope of his authority in denying a hearing. That is, Sefzik ultimately wishes to compel a government official . . . to perform some act that he considers to be nondiscretionary (holding a hearing). That relief falls within the *ultra vires* rationale."); *see also Sawyer Trust*, 354 S.W.3d at 388 ("[A] litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit.").

Contrary to its assertions, Jersey Village has not alleged a broader challenge to the validity of section 203.092, to which the Commission would be a proper party. *Compare Sefzik*, 355 S.W.3d at 621-22 (noting that in *Heinrich* the court had "necessarily concluded that the UDJA does not waive the state's sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute" and concluding that "Sefzik is not challenging the validity of a statute; instead, he is challenging TxDOT's actions under it, and he does not direct us to any provision of the UDJA that expressly waives immunity for his claim."), *and Heinrich*, 284 S.W.3d at 373 n.6 (analyzing only an *ultra vires* claim and stating: "Here, Heinrich is not challenging the validity of the bylaws or the governing statute, but rather petitioners' actions under them."), *with DeQueen*, 325 S.W.3d at 634 (UDJA waived a state agency's sovereign immunity because the suit was "not challenging an individual's actions under a statute, but [rather was] challenging the validity of

the statute itself"); *see also Montrose Mgmt. Dist. v. 1620 Hawthorne, Ltd.*, 435 S.W.3d 393, 403 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("As to [his] requested declarations, Hawthorne seeks far more than construction of section 375.262; he seeks relief for the District's *actions* under this section. Accordingly, Hawthorne has failed to establish a waiver of immunity for the District as to this requested relief.") (emphasis in original).

Our determination that Jersey Village pled only an *ultra vires* claim is reinforced by considering the alternative. Jersey Village asserted in the trial court:

> "The City is not arguing for compensation for a particular easement in a particular place. Instead, the City seeks a declaratory judgment that, when it has a compensable property interest in the land, such as the City-owned easements, then the City's acquisition of replacement utility easements are among the 'entire amount' of the reimbursements costs the State 'shall' pay pursuant to Section 203.092 of the Texas Transportation Code."

Were we to consider Jersey Village's statutory construction request as an independent claim for a general declaration regarding the proper construction of a statute under a hypothetical fact-pattern, any resulting opinion likely would run afoul of the prohibition against advisory opinions. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) ("[W]e have construed [the Texas Constitution's] separation of powers article to prohibit courts from issuing advisory opinions . . . . Accordingly, we have interpreted the [UDJA] to be merely a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power, permitting the rendition of advisory opinions. . . . The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties."); *see also Drexel Corp. v. Edgewood Dev., Ltd.*, 417 S.W.3d 672, 674 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("[T]he [UDJA] 'gives the court no power to pass upon

hypothetical or contingent situations, or determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication.'") (quoting *Firemen's Ins. Co. of Newark, N.J. v. Burch*, 442 S.W.2d 331, 333 (Tex. 1968), *superseded by constitutional amendment on other grounds as stated in Farmers Tex. Cty. Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81 (Tex. 1997) (per curiam)).

Considering Jersey Village's petition and the applicable law, we conclude that the underlying nature of Jersey Village's suit is a claim based on alleged *ultra vires* conduct contending that the Commission, a state agency, and Houghton, a state official, have refused to perform a ministerial act by refusing to pay certain relocation costs that Jersey Village contends are owed pursuant to section 203.092 of the Texas Transportation Code. Therefore, we hold that Jersey Village has only asserted an *ultra vires* claim, and, accordingly, we analyze only the *ultra vires* exception to sovereign immunity. *See Sefzik*, 355 S.W.3d at 622 n.2; *Heinrich*, 284 S.W.3d at 372.

## II. *Ultra Vires* Analysis

The Commission, as a state agency, is immune from *ultra vires* suits. *See Sefzik*, 355 S.W.3d at 621 (noting that a "claim could be brought against the appropriate state official under the *ultra vires* exception, but the state agency remains immune"); *Heinrich*, 284 S.W.3d at 372-73 ("[I]t follows that [*ultra vires*] suits cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacity."). Therefore, the trial court lacks jurisdiction over Jersey Village's claim against the Commission, and we dismiss that claim. *See Heinrich*, 284 S.W.3d at 372-73; *IT–Davy*, 74 S.W.3d at 859-60.

13

Regarding Houghton, our determination of whether his conduct falls within the *ultra vires* exception to sovereign immunity depends on what actions Texas Transportation Code section 203.092 required of the Department. Therefore, we consider first the proper construction of the statute. *See Emmett*, 459 S.W.3d at 583 (construing relevant statute and then analyzing whether government officials' conduct constituted *ultra vires* actions); *Miranda*, 133 S.W.3d at 227-28 (jurisdictional analysis will occasionally require examination of the merits of a cause of action). To the extent this case requires us to construe Texas Transportation Code section 203.092, we do so only to resolve Jersey Village's *ultra vires* claim.[9] *See Emmett*, 459 S.W.3d at 583 ("Although ordinarily we would first consider whether the [governmental actors] have governmental immunity from suit, which would implicate the trial court's subject matter jurisdiction, we begin by considering the proper construction of Texas Water Code § 49.223. That is because whether the [governmental actors]' conduct constitutes ultra vires actions that falls within an exception to governmental immunity depends on what the statute required of the [government entity].").

### A. Statutory Construction

#### 1. Texas Transportation Code section 203.092

Texas Transportation Code section 203.092 provides in pertinent part:

(a) A utility shall make a relocation of a utility facility at the expense of this state if relocation of the utility facility is required by improvement of:

. . .

(2) any segment of the state highway system and the utility has

---

[9] Jersey Village requested in its petition "a declaration . . . regarding the proper[] interpretation of TEXAS TRANSPORTATION CODE § 203.092(a)(2) and (d)."

14

a compensable property interest in the land occupied by the facility to be relocated; . . . .

. . . .

(d) The cost of relocation includes the entire amount paid by the utility properly attributable to the relocation less:

(1) any increase in the value of the new facility;

(2) the salvage value derived from the old facility; and

(3) any other deduction established by regulations for federal cost participation.

Tex. Transp. Code Ann. § 203.092.

### 2. Statutory construction standard

Our primary objective in construing a statute is to give effect to the Legislature's intent. *See Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 52 (Tex. 2014). "We construe a statute's words according to their plain and common meaning unless they are statutorily defined otherwise, a different meaning is apparent from the context, or unless such a construction leads to absurd results." *Id.* "We take statutes as we find them, presuming the Legislature included words that it intended to include and omitted words it intended to omit." *Id.* "We do not read words into a statute to make it what we consider to be more reasonable, rather we may do so only to prevent an absurd result." *Id.*

### 3. Discussion

Although the evidence was not fully developed in the trial court, the parties do not dispute that Jersey Village owns and operates the five utility lines referenced in Jersey Village's petition. Nor do the parties dispute that three of the five utility lines must be relocated as required by the improvement of segment six

15

of the U.S. Highway 290.[10] Rather, the dispute between the parties centers around whether Jersey Village has a compensable property interest in its easements, and whether replacement easements are costs that are "properly attributable to the relocation." *See* Tex. Transp. Code § 203.092(a)(2), (d).

Jersey Village contends it owns easements and that, regardless of what type of easements they happen to be, Jersey Village has a compensable property interest in those easements. Therefore, Jersey Village contends that the cost of securing replacement utility easements is properly attributable to relocation of its utility lines.

Houghton contends that Jersey Village's easements are non-exclusive public utility easements, and are not compensable property interests whose replacement costs are properly attributable to the relocation.

Although the parties dispute whether the easements constitute compensable property interests, neither party disputes that Jersey Village's lines were located in easements rather than along public right-of-ways. This distinction is important. "Under the common law, a utility company must relocate facilities located in a public right-of-way at its own expense." *Emmett*, 459 S.W.3d at 583. This rule does not apply, however, to utilities located in easements. *See Houston Lighting & Power Co. v. State*, 925 S.W.2d 312, 315 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ("We find that HL&P has a property right in these [dedicated public utility] easements and is entitled to compensation for their relocation expenses as outlined in the agreements of the parties."); *see also CenterPoint Energy Houston*

---

[10] Jersey Village asserted in its petition that the Department "will likely require to be relocated" the remaining two utility lines upon commencement of its work in segment seven of the U.S. Highway 290 improvement project. We do not reach the Commission's and Houghton's contention that Jersey Village's claims regarding these two lines are not ripe for adjudication because we dismiss Jersey Village's claim for reasons that apply to all five of the lines.

16

*Elec. LLC v. Harris Cty. Toll Rd. Auth.*, 436 F.3d 541, 543 n.3 (5th Cir. 2006) (noting that the general rule requiring a utility company to relocate facilities located in a public right-of-way at its own expense "is altered where the utility required to relocate holds an ownership interest, such as an easement in the property from which the utility facilities were relocated").

In *Houston Lighting*, we considered whether an electric utility company had a compensable property interest in a public utility easement which would entitle it to compensation under Article 1, Section 17 of the Texas Constitution. *See Houston Lighting & Power Co.*, 925 S.W.2d at 313-15. We concluded that the electric utility had a property right in its easements, and therefore that it was entitled to compensation for relocation expenses. *Id.* at 315 ("We find that HL&P has a property right in these easements and is entitled to compensation for their relocation expenses . . . .").

Jersey Village reads our holding in *Houston Lighting* as stating that a public utility easement creates a compensable property right which entitles the owner to compensation for expenses incurred in relocation of the easement itself. Our holding was not so broad. A careful reading of the opinion reflects that the utility was seeking reimbursement of the cost of relocation of "electrical facilities in three locations." *Id.* at 313. No mention was made of any relocation costs associated with replacement easements. *See id.*

Under our precedent in *Houston Lighting*, we conclude that Jersey Village has a compensable property interest in its easements—whether they be private or public—which is sufficient to entitle it to make a relocation of its utility facilities at the expense of the State.[11] *See* Tex. Transp. Code Ann. § 203.092(a)(2).

---

[11] The Commission implicitly recognized this when it entered into its agreement with Jersey Village and agreed to pay 100% of the relocation costs of Jersey Village's utility lines

However, our determination that the public utility easements created a compensable property interest does not end our inquiry because we must determine whether the replacement of those easements themselves is a cost which is "properly attributable to the relocation." *See id.* § 203.092(d).

The statutory text of section 203.092 does not provide any guidance as to which costs incurred by a utility are "properly attributable to the relocation," and which costs are not. Nor have we identified any case law specifically analyzing the issue. However, a Texas Supreme Court case is instructive.

In *State v. City of Austin*, 331 S.W.2d 737, 740-43 (Tex. 1960), the court construed a predecessor statute to section 203.092 and considered whether the use of public funds to pay utility relocation costs to private entities amounted to an unconstitutional donation for a private purpose. The court concluded that the statute was not unconstitutional because it operated prospectively; dealt with a matter in which the public has a real and legitimate interest; and was not fraudulent, arbitrary or capricious. *Id.* at 743. In so doing, the court stated:

> It should be noted, however, that if the relocated lines are placed on right of way which will be owned by the utility, the cost of acquiring said right of way is not properly attributable to such relocation within the meaning of the Act. If the state should pay this cost, it would be in the position of buying for the utility that which it would be required to take under the power of eminent domain in the event the land where the relocated lines are placed were ever needed for a different and superior public use. This would be an unconstitutional gift for a private purpose, and the statute should, if reasonably possible, be given a construction that will not render it invalid.

*Id.* at 746.

---

located within public easements. The only real disagreement between the parties was whether the costs for replacement easements were properly attributable to the relocation.

18

We defer to the Texas Supreme Court's dictum in *State v. City of Austin*.[12] Accordingly, we conclude that Texas Transportation Code section 203.092 does not include the cost of replacement easements as a cost "properly attributable to the relocation" of the utility lines.

## B.    Houghton's Conduct Is Not *Ultra Vires*

Based on our construction of section 203.092, we conclude that Houghton did not fail to perform a purely ministerial act. Because the costs of replacement easements are not "properly attributable to the relocation" of utility lines, Houghton was not required to reimburse Jersey Village for those costs.

### CONCLUSION

The Commission and Houghton are immune from suit.[13]   Accordingly, we reverse the trial court's order denying the Commission and Houghton's plea to the jurisdiction, and we dismiss Jersey Village's suit for lack of jurisdiction.

/s/    William J. Boyce
       Justice

Panel consists of Chief Justice Frost and Justices Boyce and McCally (Frost, C.J., concurring).

---

[12] We note that two of the court's members specifically recommended via separate opinion that the court remove the quoted statement. *See id.* at 747 (Smith, J., op. on mot. for reh'g). However, the majority did not remove the language from its opinion. Accordingly, we read the court's language as authoritative "judicial dictum" articulated "very deliberately after mature consideration." *See Elledge v. Friberg–Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007).

[13] Because we conclude that Houghton and the Commission are immune from suit, we necessarily conclude that Jersey Village is not entitled to recover attorney's fees from either party.