Opinion issued November 25, 2025



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-23-00863-CV

———————————————

### HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE AND HARRIS COUNTY, Appellants

### V.

### AMEAL WOODS AND JORDAN DAVIS, Appellees

On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Case No. 2021-54748

## MEMORANDUM OPINION

Harris County police officers stopped Ameal Woods, searched his car, and seized funds found in the search. Those funds became the subject of a civil forfeiture

action.[1] Jordan Davis, who claimed ownership of some of the seized funds, and Woods brought suit under the Uniform Declaratory Judgment Act (UDJA) against the appellants, Harris County District Attorney's Office (HCDAO) and Harris County, on behalf of themselves and a proposed class based on claims challenging Harris County's civil forfeiture enforcement policies and practices and the constitutionality of Texas's civil forfeiture statutes.

In this appeal, HCDAO and Harris County contend that the trial court erred in denying their pleas to the jurisdiction based on governmental immunity. We reverse and render judgment dismissing the case for lack of jurisdiction.

**Background**

Woods, a resident of Natchez, Mississippi, wanted to buy a second tractor-trailer to expand his business.[2] He researched secondhand tractors and trailers and discovered that he could buy a trailer meeting his specifications near Houston selling for between $3,000 and $9,000. He was also interested in a few tractors near Houston selling for between $25,000 and $35,000.

---

[1] *State v. Approximately $41,680.00*, No. 2019-39625, in the 152nd District Court of Harris County, Texas. This Court recently reversed the trial court's judgment upholding the forfeiture and rendered judgment ordering the State to return the proceeds to Woods and Davis. *Woods v. State*, No. 01-23-00818-CV, 2025 WL 2832219, at *5 (Tex. App.—Houston [1st Dist.] Oct. 7, 2025, no pet. h.) (mem. op.).

[2] The petition describes Woods and Davis as common-law spouses.

Woods planned a trip to Houston to look at and possibly buy the equipment. He knew that most secondhand sellers preferred a cash transaction, so he decided to bring enough cash to Houston to buy both a tractor and a trailer. Woods had savings of $22,800 and borrowed additional funds from Davis and his niece. He rented a car and, carrying $42,300 in cash, headed west on Interstate 10 toward Houston.

On the outskirts of Houston, Harris County police officers in a marked patrol car ordered Woods to pull over. Woods complied and was told that he had been following a tractor-trailer too closely. Woods cooperated with the officers, responding to their questions and consenting to a search of the rental car.

Woods told the officers about the reason for his trip and explained that he brought cash for a possible purchase. The officers found the cash wrapped in plastic and taped into a bundle. When asked about the source of the funds, Woods explained that some came from Davis. An officer used Woods' phone to call Davis, who explained to the officer that she had loaned Woods $6,500, which came from her employment earnings and a recent tax refund. The officer told Davis that he would let Woods go.

After ending the call, the officer told Woods that he was seizing all the cash because he thought the money was "connected to drugs." The officer took the bundle of cash but didn't count it. He gave Woods an incident number and told Woods that

3

he was free to go. Without funds to buy any equipment, Woods returned to Mississippi.

HCDAO filed a civil forfeiture complaint against the funds taken from Woods and Davis.[3] Nearly two years later, after several failed attempts to serve Woods with the complaint, the trial court appointed a guardian ad litem to complete service and represent Woods's interests. The guardian ad litem contacted Woods once, but Woods had difficulty getting more information about the case until he retained counsel some time later. Woods also alleged that the amount at issue in the civil forfeiture action was $620 less than the amount seized from him, funds that Harris County still has not accounted for.

According to Woods and Davis, what happened to them "routinely happen[ed] to other property owners in Harris County." Their counsel's review of 113 other civil forfeiture petitions filed by Harris County prosecutors revealed that the petitions contained the same or similar boilerplate allegations to support the property seizure as those alleged in the petition filed against the funds seized from Woods.

Woods and Davis alleged "[a]s a result of Harris County's unconstitutional behavior and the state's unconstitutional laws," they "have suffered numerous redressable injuries." Woods had to repay his niece the $13,000 she had loaned him and without the seized funds, he "has not been able to expand his trucking business."

---

[3]     *See* n.1 *supra.*

4

Davis also lost the funds she wanted to use to support Woods's "ambition to generate more trucking business."

On behalf of themselves and a proposed class,[4] Woods and Davis challenged the constitutionality of certain property-seizure and civil forfeiture policies and practices implemented by HCDAO and Harris County law enforcement. They cited the following policies and practices as violative of the seized property owners' right to due process of law under Texas Constitution Article 1, section 9:

- Harris County law enforcement officers seized their funds based only on "the fact that Woods was traveling with a large amount of cash on which a dog allegedly alerted sometime after the seizure" and had no probable cause "connect[ing] the money or its owners to criminal behavior."

- Harris County prosecutors sought civil forfeiture based on hearsay and "boilerplate testimony, written by law enforcement officers who were not at the scene, using forms which have not been updated in five years or more," which "denies property owners meaningful notice of the allegations and evidence against them," discourages them from contesting the seizure and civil forfeiture of their property, and "leads courts to enter judgments of forfeiture based on deficient pleadings and insufficient evidence."

---

[4] The proposed class is defined as

All people who own (or partly own) property seized in Harris County between August 30, 2016, and the date of class certification, when all of the following conditions are met: (a) Harris County has filed a civil forfeiture petition on behalf of the State of Texas; (b) the civil forfeiture petition incorporates an affidavit that exhibits hallmarks of a form affidavit used by Harris County police and prosecutors or was written by someone who was not present at the time and place of seizure; and (c) the owner (or part owner) of the property has not been criminally charged with a forfeitable offense in connection with the seizure.

5

- The lack of a procedure for obtaining a prompt, post-seizure hearing before civil forfeiture proceedings were instituted deprived them of a prompt challenge to an officer's probable cause determination.

- The "innocent owner" defense in the civil forfeiture proceeding, which required them to prove by a preponderance of evidence that they own the seized property, acquired ownership of it before the seizure, and did not know about the act or omission on which forfeiture is based and should not reasonably have known.[5]

Woods and Davis also challenged the constitutionality of Code of Criminal Procedure section 59.06(c), which permits law enforcement agencies and prosecutors to keep all proceeds from civil forfeiture cases. According to appellants, section 59.06 creates a financial incentive "for law enforcement to seize property without probable cause and for prosecutors to seek forfeiture without an evidentiary basis for doing so," in violation of Article 1, section 19 of the Texas Constitution.

Woods and Davis invoked the trial court's subject-matter jurisdiction "based on the Texas Constitution and the [UDJA]."[6] They sought declaratory and injunctive relief on behalf of themselves and the proposed class, asking the trial court to "strik[e] down Harris County's systematic violation" of their rights under Texas Constitution Article 1, sections 9 and 19 and "strik[e] down the challenged

---

[5] *See* TEX. CODE CRIM. PROC. Art. 59.02(c).

[6] TEX. CIV. PRAC. & REM. CODE §§ 37.003.

6

dimensions" of Texas's civil forfeiture procedures. And they requested the following declarations:

- Harris County's policies and practices of seizing and forfeiting property without probable cause violate Texas Constitution Article I, section 9;

- Texas law and Harris County's policies and practices deprive people of their property without due process of law under Article I, section 19 of to the extent that neither state law nor local procedure provide for a prompt hearing before a neutral magistrate within 30 days of seizure;

- Harris County's policy and practice of relying on hearsay testimony rendered the ounty's probable cause determinations void under Article I, § 9 and deprives people of their property without due process of law in violation of Article I, § 19;

- Harris County's policy and practice of relying on cut-and-paste allegations and testimony renders its probable cause determinations void under Article I, section 9 and deprives people of their property without due process of law in violation of Article I, section 19;

- Code of Criminal Procedure section 59.06(c) violates Texas Constitution Article I, sections 9 and 19 by incentivizing seizures and civil forfeitures without probable cause and by denying property owners due process of law; and that Harris County's policies and practices violate Article I, sections 9 and 19 by financially incentivizing seizures and civil forfeitures without probable cause and by denying property owners due process of law;

- Code of Criminal Procedure section 59.06(c)(1) violates Texas Constitution Article I, section 19 by placing the burden of proof in civil forfeiture proceedings on persons asserting their innocence; that Harris County's policy and practice of relying on section 59.02(c)(1) to seize property without probable cause violates Article I, § 9; and that Harris County's policy and

7

practice of relying on section 59.02(c)(1) to provide insufficient notice to property owners who were not present at the time and place of seizure violates Article I, § 19;

- Harris County violated Woods's rights under Texas Constitution Article I, section 9 when Sergeant Wade pulled him over without probable cause to believe that Woods had committed an offense; and that Sergeant Wade's seizure of money from Woods lacked probable cause to believe that all of the money was connected to a specific forfeitable offense;

- Harris County violated Davis's rights under Texas Constitution Article I, section 9 when Sergeant Wade seized $6,500 from her without probable cause to believe that all of the money was connected to a specific forfeitable offense;

- Woods and Davis are entitled to a probable cause hearing before a neutral magistrate; and that procedural due process under Article I, section 19 requires that the owners of seized property are entitled to notice and an opportunity to be heard by a neutral magistrate within 30 days of the date of seizure;

- Harris County's reliance on the hearsay affidavit of Officer G. Nason (filed in support of the civil forfeiture petition seeking title to Woods's and Davis's money) violates Article I, section 9 by allowing for long-term seizures of property without probable cause to believe that a crime occurred and that the property can be connected to a specific forfeitable offense and violates the due-process protections of Article I, section 19 because Officer Nason's position in the Sheriff's Office depends on his consistent determination that probable cause exists to seize and forfeit property;

- Harris County's reliance on the boilerplate allegations and form affidavit in the civil forfeiture petition seeking title to Woods's and Davis's money violate Article I, section 9 by allowing long-term seizures of property without probable cause to believe that a forfeitable crime occurred and the property can be connected to that crime and violate the due-process protections

8

of Article I, section 19 by depriving Woods and Davis of property based on unreliable and formulaic testimony;

- Code of Criminal Procedure section 59.02(c)(1) violates Davis's rights under Article I, section 9 because it allows for the seizure and attempted forfeiture of her property without probable cause connecting her and the property to a specific forfeitable offense; that the statute violates Davis's right to procedural due process under Article I, section 19 by placing the burden to prove her innocence on her; and that Harris County's policies and practices relying on the statute to justify seizures and attempted forfeitures without probable cause violate Davis's rights under Article I, section 9;

- Code of Criminal Procedure section 59.06(c) violates Woods's and Davis's rights to a probable cause determination free from personal and institutional financial self-interest; and that subjecting people to civil forfeiture proceedings motivated in whole or in part by financial incentives violates their right to due process under Article I, section 19; and

- Harris County made insufficient efforts to identify, find, and notify Woods and Davis of the civil forfeiture action against their property.

Woods and Davis also asked the trial court to enter a permanent injunction requiring the Harris County parties "to observe policies and practices consistent with the terms of the trial court's declarations" and prohibiting the Harris County parties "from relying" on Code of Criminal Procedure sections 59.02(c)(1) and 59.06(c) "to the extent those provisions violate the Texas Constitution." And they asked the trial court to award them each $1 in nominal damages, attorney's fees and costs.

HCDAO and Harris County filed pleas to the jurisdiction asserting that Woods's and Davis's claims are barred by sovereign and governmental immunity.

9

In its plea, Harris County pointed out state law vests all prosecutorial authority in the District Attorney. *See* TEX. GOV'T CODE § 43.180(c). It argued that because the County itself has no prosecutorial authority, it cannot, as a matter of law, initiate forfeiture proceedings.

In its plea to the jurisdiction, HCDAO maintained that governmental immunity was not waived for Woods's and Davis's UDJA claims as to whether HCDAO's alleged policies, practices, and procedures complied with the law. It also argued that the trial court lacked jurisdiction over Woods's and Davis's claims for declaratory relief because they had already raised them as affirmative defenses in the civil forfeiture suit.

The trial court denied the pleas to the jurisdiction and HCDAO and Harris County brought this appeal.

## Waiver of Immunity

In their sole issue, HCDAO and Harris County argue that the trial court erred in denying their pleas to the jurisdiction because the appellees' pleadings do not show a waiver of governmental immunity.

## A.    Standard of Review

Sovereign immunity protects the State against lawsuits for damages unless the State consents to be sued. *Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 283 (Tex. 2022). Governmental immunity similarly protects political subdivisions of the State,

including counties. *Id.* at 284; *City of Houston v. Branch*, 695 S.W.3d 580, 586 (Tex. App.—Houston [1st Dist.] 2024, pet. denied) (en banc) (op. on reh'g).

Immunity from suit thus "presents a jurisdictional question of whether the State has expressly consented to suit." *Gulf Coast Ctr.*, 658 S.W.3d at 284. In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the trial court's jurisdiction over the case by establishing a valid waiver of immunity. *Id.*; *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

A plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When the jurisdictional plea challenges the pleadings, we must determine whether the pleader has alleged facts affirmatively demonstrating subject-matter jurisdiction. *Id.* When, as here, a plea to the jurisdiction challenges the plaintiffs' pleadings, we must determine whether the plaintiff has alleged facts that affirmatively demonstrate jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether the plaintiff has met this burden is also a question of law that we review de novo. *Id.* Under this review, we construe the pleadings liberally in favor of the plaintiff and consider the pleader's intent. *Id.* Unless the pleadings affirmatively negate the existence of jurisdiction, the plea to the jurisdiction should not be granted without allowing the plaintiff an opportunity to amend. *See id.* at 226–27.

**B.      Claims Under the Declaratory Judgment Act**

The UDJA permits a person whose rights, status, or other legal relations are affected by a statute to obtain a declaration of rights, status, or other legal relations under the statute. *Tex. Transp. Comm'n v. City of Jersey Vill.*, 478 S.W.3d 869, 876 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *see* TEX. CIV. PRAC. & REM. CODE § 37.004(a). The statute "does not enlarge the trial court's jurisdiction but is 'merely a procedural device for deciding cases already within a court's jurisdiction.'" *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) (per curiam) (quoting *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011)). It "waives sovereign immunity for certain claims," but "it is not a general waiver of sovereign immunity." *Sawyer Tr.*, 354 S.W.3d at 388–89. "Consequently, sovereign immunity will bar an otherwise proper [U]DJA claim that has the effect of establishing a right to relief against the State for which the Legislature has not waived sovereign immunity." *Id.*

**1.      The UDJA does not waive immunity for claims challenging the policies and procedures of HCDAO and Harris County.**

HCDAO and Harris County argue that most of Woods's and Davis's claims do not come within the UDJA's waiver because they do not expressly challenge a statute or regulation. The UDJA waives governmental immunity for claims that a statute or ordinance is invalid. *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011); *see* TEX. CIV. PRAC. & REM. CODE § 37.004(a). We agree that these

express waivers do not include challenges to the constitutionality of a governmental entity's "policies and practices" like those raised by Woods and Davis.

Woods and Davis liken their constitutional claims to those considered in *Heckman v. Williamson County*, 369 S.W.3d 137 (Tex. 2012). There, the plaintiffs asserted that as individuals accused of misdemeanor crimes, they had been deprived of their constitutional rights to court-appointed counsel, self-representation, and open-court proceedings by certain judges in Williamson County, and they sought injunctive and declaratory relief to stop the "unconstitutional and unfair practices." *Id.* at 144.

But Woods and Davis overlook an important distinction between the plaintiffs' claims in *Heckman* and their own. Although the relief sought in *Heckman* is the same as that available under the UDJA, the *Heckman* plaintiffs' claims were not brought under the UDJA. Instead, The *Heckman* plaintiffs brought their constitutional claims under 42 U.S.C. section 1983, which "creates a private right of action for violations of an individual's federally guaranteed rights by those acting under color of state law." *Hamilton v. Pechacek*, 319 S.W.3d 801, 811 (Tex. App.— Fort Worth 2010, no pet.). The issue of immunity under section 1983 requires consideration of (1) "whether the [state official's] conduct has violated a federal right" and (2) "whether the right in question was 'clearly established' at the time of

the alleged violation, such that the [state official] was on notice of the unlawfulness of his or her conduct." *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019).

Unlike a section 1983 action, which requires consideration of an official's specific conduct, the UDJA does not waive immunity for such claims. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) (explaining distinction between challenge to statute's validity and challenge to governmental entity's actions under statute); *see also Tabrizi v. City of Austin*, 551 S.W.3d 290, 297–98 (Tex. App.—El Paso 2018, no pet.) (holding that UDJA did not waive immunity for claim asserting that certain ordinance provisions did not apply to claimant's property).

Woods and Davis suggest that they have ultra vires claims against the HCDAO officials named in their petition "for nondiscretionary acts unauthorized by law." *Sefzik*, 355 S.W.3d at 621. [S]overeign immunity does not prohibit suits brought to require state officials to comply with statutory or constitutional provisions." *Patel*, 469 S.W.3d at 76. "To fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich*, 284 S.W.3d at 372.

We do not find any ultra vires allegations in Woods's and Davis's pleadings. The pleadings do not include the term "ultra vires," and they are silent as to any acts

14

undertaken by the named HCDAO officials that would support ultra vires claims against them. They assert that the HCDAO, by implementing certain policies, itself acted unconstitutionally, not that the officials performed any legally unauthorized nondiscretionary act. *See Sefzik*, 355 S.W.3d at 621; *see also Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010) ("Because the claim at issue here is not one involving a government officer's action or inaction, but is a challenge to a statute, this is not an ultra vires claim to which a government officer should have been made a party."). The alleged policies that Woods and Davis challenge would have been promulgated by the governmental entities themselves, not by a single official. For this reason, we conclude that the pleadings do not allege any ultra vires claims.

**2.    Woods's and Davis's constitutional challenges to Harris County officials' acts and the civil forfeiture statute are barred by the redundant remedies doctrine.**

HCDAO and Harris County assert that the trial court erred in denying their plea to the jurisdiction because Woods and Davis raised the same constitutional claims in the already-pending civil forfeiture action that they brought under the UDJA below. "Under the redundant remedies doctrine, courts will not entertain an action brought under the UDJA when the same claim could be pursued through different channels." *Patel*, 469 S.W.3d at 79. "The focus of the doctrine is on the initiation of the case, that is, whether the Legislature created a statutory waiver of

15

sovereign immunity that permits the parties to raise their claims through some avenue other than the UDJA." *Id.*

In the civil forfeiture case, Woods and Davis, as owners of the seized property, asserted the same constitutional challenges that they raise here. As to the initial seizure, they complained that the State lacked probable cause to seize their property. They also argued that the State denied their right to procedural due process by (1) failing to make "reasonable and diligent efforts to serve them with notice" of the civil forfeiture petition's filing and (2) failing to provide the means to obtain "an interim hearing before a neutral magistrate" in which they could challenge whether the State had probable cause to seize their property. As here, Woods and Davis challenged the constitutionality of the innocent-owner defense under Code of Criminal Procedure Article 59.02(c), asserting that placing the burden of proof on the owner violated their procedural and substantive due process rights. And they challenged Code of Criminal Procedure section 59.06 as violating their due process protections, contending that it created a profit incentive by allowing the seizing agency to keep forfeiture proceeds for its own benefit.

In *Patel*, the supreme court held that the redundant remedies doctrine did not apply to the plaintiffs' claims because the Administrative Procedure Act did not allow for an attack on the constitutionality of statutes. *See id.* at 79–80. In arguing that the redundant remedies doctrine does not apply here, Woods and Davis strive to

distinguish their claims from those in the civil forfeiture case by pointing out that the relief they seek would apply not only to them, but to a class of plaintiffs.

This argument is premature; the trial court has not certified a class. It is also wrong. A ruling that a statute is unconstitutional, even in an individual case, applies to all. *See, e.g.*, *Ex parte Williams*, ___ S.W.3d ___, ___, 2025 WL 2985919, at *1 (Tex. Crim. App. Oct. 23, 2025) (holding habeas applicant entitled to relief based on holding in *Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013), that statute under which he was convicted was unconstitutional); *In re Lester*, 602 S.W.3d 469, 471, 475 (Tex. 2020) (holding applicant was entitled to compensation for wrongful imprisonment after conviction under statute struck down by *Ex parte Lo*); *see also* TEX. CIV. PRAC. & REM. CODE § 37.006(b) (requiring notice to attorney general in "any proceeding" in which statute is alleged to be unconstitutional).

We hold that the trial court erred in denying the pleas to the jurisdiction.

We sustain the appellants' sole issue.

## Conclusion

We vacate the trial court's order denying the pleas to the jurisdiction and render judgment dismissing Woods's and Davis's claims for lack of jurisdiction.

Clint Morgan
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.

18