**Affirmed and Majority Opinion and Concurring and Dissenting Opinion filed April 29, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00214-CV

---

### JACK PIDGEON AND LARRY HICKS, Appellants

### V.

### SYLVESTER TURNER, IN HIS OFFICIAL CAPACITY AS MAYOR OF THE CITY OF HOUSTON, AND THE CITY OF HOUSTON, Appellees

---

**On Appeal from the 310th District Court
Harris County, Texas
Trial Court Cause No. 2014-61812**

---

## MAJORITY OPINION

Appellants Jack Pidgeon and Larry Hicks (collectively, "appellants"), individual taxpayers, bring this interlocutory appeal challenging the trial court's order granting the plea to the jurisdiction of appellee Sylvester Turner, in his

official capacity as the Mayor of the City of Houston ("Mayor Turner") and appellee City of Houston ("the City"). We affirm the trial court's order.

## I.  BACKGROUND

In 2013, after a decision of the U.S. Supreme Court invalidated part of the federal Defense of Marriage Act ("DOMA"),[1] the then-Houston Mayor Annise Parker ("Mayor Parker"), on advice from the city attorney,[2] on November 19, 2013, "direct[ed] that same-sex spouses of employees who have been legally married in another jurisdiction be afforded the same benefits as spouses of a heterosexual marriage."[3]

Appellants, who identify themselves as Houston residents and taxpayers, oppose Mayor Parker's directive and seek to enjoin Mayor Turner and the City from continuing to spend public funds for the extension of benefits to same-sex spouses of city employees by claiming those benefits violate state and city DOMAs contained in the Texas Constitution, Texas Family Code, and Houston City Charter.[4] Appellants also seek an injunction to "claw back" taxpayer money

---

[1] On June 26, 2013, in *United States v. Windsor*, the Supreme Court examined the constitutionality of the federal DOMA, which defined marriage for federal-law purposes as limited to unions between a man and a woman and denied same-sex couples, including those legally married in a state in which same-sex marriage was recognized, the federal benefits and protections granted to heterosexual married couples. 570 U.S. 744 (2013). The Supreme Court held that Section 3 of the federal DOMA violated the Fifth Amendment. *Windsor*, 570 U.S. at 774–75. The Court recognized that the federal DOMA "depart[ed] from [a] history and tradition of reliance on state law to define marriage." *Id*. at 768.

[2] The city attorney issued a legal opinion finding "the continued application of Article II, Section 22 of the Houston City Charter to deny benefits to legally married same-sex spouses to be unconstitutional, primarily because it denies the employees of such spouses equal protection of the laws."

[3] Before November 19, 2013, appellees interpreted the Houston City Charter and the Texas Family Code as requiring them to deny benefits to same-sex spouses of city employees who were legally married in states where same-sex marriage was recognized.

[4] The state and city DOMAs at issue are set forth, *infra*, at Section II.

that Mayor Parker and other city officials allegedly have "unlawfully spent" on same-sex spousal benefits of city employees. Appellants further seek declarations regarding Mayor Parker's directive and its continued enforcement.

## A. PRIOR PROCEDURAL HISTORY

This case was filed on October 22, 2014; however, the parties were embroiled in prior litigation, which we briefly review. On December 17, 2013, appellants sued Mayor Parker and the City of Houston in Harris County, Texas state court (*Pidgeon I*), challenging Mayor Parker's directive and the City's provision of benefits pursuant to that directive and seeking temporary and permanent injunctions preventing the defendants from providing such benefits. They were initially successful, and a state trial judge issued a temporary injunction prohibiting the city from "furnishing benefits to persons who were married in other jurisdictions to City employees of the same sex." Shortly before the injunction expired, the Mayor removed the case to federal district court in the Southern District of Texas, asserting federal-question jurisdiction, 28 U.S.C. § 1441(a). The case was eventually remanded back to state court on August 28, 2014. *See Pidgeon v. Parker*, 46 F. Supp.3d 692, 700 (S.D. Tex. 2014) (Rosenthal, J.). Prior to the remand, however, the state court gave notice to appellants that a motion to retain was required to keep the case on its docket. Appellants did not file a motion to retain. Thus, the state court dismissed the case for want of prosecution on May 9, 2014. Appellants did not challenge the dismissal of *Pidgeon I*.

## B. THE CURRENT LITIGATION

On October 22, 2014, appellants filed this case (*Pidgeon II*). In their Original Petition and Application for Temporary Restraining Order, Application for Temporary Injunction, and Application for Permanent Injunction, appellants allege that they are Houston taxpayers and qualified voters, that Mayor Parker's

directive to the City to offer benefits to same-sex spouses of city employees who are married in a state that recognizes same-sex marriage is a "violation of Texas Family Code § 6.204, Texas Constitution Article I, § 32, and Article II, § 22 of the City of Houston Charter." Appellants sought unspecified actual damages as well as temporary and permanent injunctive relief prohibiting the City from providing these benefits.

Mayor Parker and the City filed pleas to the jurisdiction asserting governmental immunity and challenging appellants' standing to assert their claims. The trial court denied the pleas and granted appellants' request for a temporary injunction prohibiting Mayor Parker "from furnishing benefits to persons who were married in other jurisdictions to City employees of the same sex." Mayor Parker and the City filed an interlocutory appeal challenging both the order denying the pleas to the jurisdiction and the order granting the temporary injunction.

While Mayor Parker's and the City's appeal was pending before our court, on June 26, 2015, the U.S. Supreme Court issued its opinion in *Obergefell*, in which it held that same-sex couples had a constitutional "right to marry." *Obergefell v. Hodges*, 576 U.S. 644, 675–76 (2015). In particular, the Court ruled that similar statutes in four other states, which defined marriage as a union between one man and one woman, were unconstitutional to the extent that they excluded "same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples." *Id*. at 647. Shortly thereafter, in response to *Obergefell*, the Fifth Circuit upheld a lower court's ruling enjoining the State of Texas from enforcing the provisions in the Texas Constitution and the Family Code, or any other laws or regulations, that prohibit "a person from marrying another person of

4

the same sex or recognizing same-sex marriage." *De Leon v. Abbott*, 791 F.3d 619, 624–25 (5th Cir. 2015).

On July 28, 2015, our court, in a per curiam opinion, reversed the trial court's temporary injunction and remanded for proceedings consistent with *Obergefell* and *De Leon*. *See Parker v. Pidgeon*, 477 S.W.3d 353, 355 (Tex. App.—Houston [14th Dist.] 2015), *rev'd sub nom. Pidgeon v. Turner*, 538 S.W.3d 73 (Tex. 2017). Appellants filed a petition for review with the Texas Supreme Court, which was granted.[5]

In a decision dated June 30, 2017, the Texas Supreme Court reversed our decision, holding that the case should be remanded to the trial court so it could consider the impact of both *Obergefell* and *DeLeon* on appellants' claims. *Pidgeon v. Turner*, 538 S.W.3d 73, 83–84, 89 (Tex.), *cert. denied*, 138 S. Ct. 505 (2017). It further explained:

> The Supreme Court held in *Obergefell* that the Constitution requires states to license and recognize same-sex marriages to the same extent that they license and recognize opposite-sex marriages, but it did not hold that states must provide the same publicly funded benefits to all married persons, and -- unlike the 5th Circuit in *De Leon* -- it did not hold that the Texas DOMAs are unconstitutional.

*Id*. at 86–87.[6] The City requested review from the U.S. Supreme Court, but it denied *certiorari*. *See Turner v. Pidgeon*, 138 S. Ct. 505 (2017).

_____

[5] Initially, on September 2, 2016, the Texas Supreme Court denied review. *See Pidgeon v. Turner*, 549 S.W.3d 130 (Tex. 2016).

[6] *See City of Fort Worth v. Rylie*, 602 S.W.3d 459, 469 (Tex. 2020) (citing *Pidgeon* for the proposition that where a question "presents an important issue of first impression in this Court, we decline to address the question in the first instance and defer instead for the court of appeals to address it after full briefing and argument by the parties."); *see also In re Occidental Chem. Corp.*, 561 S.W.3d 146, 173 (Tex. 2018) (citing *Pidgeon* for the proposition that before the Supreme Court will resolve a dispositive issue, the "preferred and proper process" is to allow a "complete vetting of the parties' potential arguments in the lower courts" so that the Court has a "full record" before it).

While the Texas Supreme Court still had jurisdiction over the case and no mandate had been issued, appellants filed their First Amended Petition and Application for Temporary Injunction. In their amended petition against Mayor Turner and the City,[7] appellants set forth two causes of action:

- Plaintiffs Pidgeon and Hicks bring suit as taxpayers to enjoin the mayor's *ultra vires* expenditures of public funds, and to secure an injunction that requires city officials to claw back public funds that were spent in violation of section 6.204(c)(2) of the Texas Family Code; article I, section 32 of the Texas Constitution; and article II, section 22 of the City of Houston charter.

- Plaintiffs Pidgeon and Hicks bring suit under the Declaratory Judgment Act, asking this Court to declare that the mayor's directive of November 19, 2013, violated state law, and to declare further that the mayor and city officials have no authority to disregard state law merely because it conflicts with their personal beliefs of what the U.S. Constitution or federal law requires.

In their request for relief, they sought:

- a declaration that the mayor's directive of November 19, 2013, violated state and city law;

- a declaration that the mayor and city officials have no authority to disregard state or city law merely because it conflicts with their personal beliefs of what the U.S. Constitution or federal law requires;

- a declaration that the mayor and the city are violating state law by continuing to enforce the mayor's directive of November 19, 2013;

- a temporary and permanent injunction requiring the mayor and the city to claw back all public funds that they illegally spent on spousal benefits for the homosexual partners of city employees;

---

[7] After Mayor Parker's term in office concluded at the end of 2015, her successor, Mayor Turner, left the directive in place, and appellants have continued their lawsuit against Mayor Turner and the City.

6

- a temporary and permanent injunction requiring the mayor and the city to comply with section 6.204(c)(2) of the Texas Family Code;
- reasonable attorney's fees;
- pre- and post-judgment interest as allowed by law;
- all costs of suit; and
- all other relief that this Court deems appropriate.

On July 2, 2018, appellants filed a motion for summary judgment. In their motion, appellants argued that the only issues for the trial court to resolve were questions of law: "(1) Whether the city can defend its present-day defiance of section 6.204(c)(2) by relying on the Supreme Court's decisions in *Obergefell* and *Pavan v. Smith*, 137 S. Ct. 2075 (2017); and (2) Whether the city can defend its pre-*Obergefell* defiance of section 6.204(c)(2) by relying on then-mayor Parker's personal beliefs that the statute was unconstitutional." Appellants also argued in their motion that they were entitled to an injunction requiring Mayor Turner and the City to "claw back" public funds that they previously spent in violation of Section 6.204(c)(2).

On August 21, 2018, Mayor Turner and the City filed a First Amended Answer to Plaintiffs' First Amended Petition and Application for Temporary Injunction, including affirmative defenses – of lack of jurisdiction for declaratory relief; lack of subject matter jurisdiction; no standing to bring claims; failure to join necessary parties, enforcement is preempted by federal law and the U.S. Constitution; no entitlement to "claw back" money paid; no entitlement to attorney's fees; and the requested relief would be unconstitutional under the Due Process and Equal Protection Clauses and violate state and federal laws. On that same day, Mayor Turner and the City filed their plea to the jurisdiction and/or counter motion for summary judgment. Additionally, Mayor Turner and the City

also filed a response to appellants motion for [partial] summary judgment, and reply to appellant's response to appellees' plea to the jurisdiction, arguing appellants were not entitled to summary judgment because their claims were barred by governmental immunity.

On February 18, 2019, the trial court granted Mayor Turner's and the City's plea to the jurisdiction and/or counter-motion for summary judgment, dismissing appellants' claims with prejudice. In its order, the trial court stated:

> On June 30, 2017, the Texas Supreme Court remanded this case to the 310th Court for both parties to have a "full and fair" opportunity to litigate their legal positions in light of *Obergefell*. The Texas Supreme Court noted that Pidgeon sued the Mayor pre-*Obergefell* for acting *ultra vires* in issuing and enforcing the directive to provide benefits to employees' same-sex spouses in violation of DOMA. The issue now before this trial court on a plea to the jurisdiction and motions for summary judgment is whether Mayor Turner's directive was unlawful and unauthorized in light of the United States Supreme Court's opinion in *Obergefell v. Hodges*, 135 S. Ct. 2534 (2015). Both parties have briefed the issue and the parties have filed competing motions for summary judgment.
>
> After considering said plea/motion and the summary judgment evidence filed by Defendants, the Court is of the opinion that said plea/motion should be GRANTED.
>
> It is therefore ORDERED that all of Plaintiffs' claims are dismissed with prejudice.
>
> All other relief not expressly granted herein is denied. This is a final order.

Appellants filed a timely notice of appeal in this Court.

## II.  STATE AND CITY DOMAS AT ISSUE

### A.  TEXAS FAMILY CODE § 6.204(c)

In 2003, the Texas legislature amended the Texas Family Code to add Section 6.204, which among other things, prohibits recognition in Texas of lawful

same-sex marriages executed in other jurisdictions.  Tex. Fam. Code § 6.204; *see* Act of Sept. 1, 2003, 78th Leg., R.S., ch. 124, § 1 (West 2003).  Section 6.204(b) declares void a marriage or a civil union of persons of the same sex.  *Id.* § 6.204(b).  Additionally, Section 6.204(c) prohibits the State and any of its agencies and political subdivisions from giving effect to any:

> (1) public act, record, or judicial proceeding that creates, recognizes, or validates a marriage between persons of the same sex or a civil union in the state or in any other jurisdiction; or
>
> (2) right or claim to any legal protection, benefit, or responsibility asserted as a result of a marriage between persons of the same sex or a civil union in this state or in any other jurisdiction.

*Id.* § 6.204(c).

## B.  TEXAS CONSTITUTION § 32

In 2005, after approval by the Texas Legislature and Texas voters, Article I of the Texas Constitution was revised to include the following amendments under Section 32:

> (a) Marriage in this state shall consist only of the union of one man and one woman.
>
> (b) This state or a political subdivision of this state may not create or recognize any legal status identical or similar to marriage.

Tex. Const. art. I, § 32; *see* H.J.R. Res. 6, 79th Leg., Reg. Sess. (Tex. 2005).

## C.  Houston City Charter[8]

In 2001, voters petitioned and approved an amendment to Article II of the Houston City Charter, which provides, in relevant part, as follows:

---

[8]  Houston is a Texas municipal corporation and home-rule city, which is governed by a city charter.  *See* Tex. Const. art. XI, § 5.  We take judicial notice of Houston's City Charter as required by Section 9.008(b) of the Texas Local Government Code.  Tex. Loc. Gov't Code § 9.008(b) ("Recorded charters or amendments are public acts.  Courts shall take judicial notice of them, and no proof is required of their provisions.").

Except as required by State or Federal law, the City of Houston shall not provide employment benefits, including health care, to persons other than employees, their legal spouses and dependent children.

Article II, § 22.

### III.  ISSUES

Appellants assert the following as "issues" on appeal:

I. The Trial Court Should Have Denied Defendant's Plea to Jurisdiction

II. *Obergefell* and *DeLeon* do not compel states to pay taxpayer-funded benefits to same sex relationships, and federal courts do not commandeer state spending decisions

III. Just as *Harris v. McRae* rejected demands for compelling taxpayer-funded abortion, courts should reject attempts to compel taxpayer funding of same-sex relationship

IV. The religious liberty protections *Obergefell* and *DeLeon* reinforce the safeguard against compelling taxpayers to fund same sex relationships

V. Defendants miss the point by arguing about "access" and "recognition" rather than addressing the exact statute that protects taxpayers

VI. The Plaintiffs are entitled to an injunction that forbids the Mayor to spend public funds in violation of section 6.204( c)(2)

VII. The Appellants are entitled to an injunction requiring the Defendants to claw back public funds that they previously spent in violation of section 6.204(c)(2)

VIII. The Mayor and the City officials have no right to violate state law merely on account of their personal belief that state law violates the Constitution

IX. The Plaintiffs satisfy all the requirements for a temporary injunction

10

## IV. ANALYSIS

### A. Standard of Review and Governing Law

#### 1. Plea to the Jurisdiction

We review de novo the trial court's ruling on a plea to the jurisdiction. *See Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020); *Chambers-Liberty Counties. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). A plea to the jurisdiction may challenge whether the plaintiff has met its burden of alleging jurisdictional facts or it may challenge the existence of jurisdictional facts. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

When a plea to the jurisdiction challenges the existence of jurisdictional facts with supporting evidence, our standard of review mirrors that of a traditional summary judgment: we consider all of the evidence relevant to the jurisdictional issue in the light most favorable to the nonmovant to determine whether a genuine issue of material fact exists. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (citing *Miranda*, 133 S.W.3d at 227–28).[9] "[A] court deciding a plea to the jurisdiction ... may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). A court may consider such evidence as necessary to resolve the dispute over the jurisdictional facts even if the evidence

---

[9] "[T]his standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c) . . . . By requiring the [S]tate to meet the summary judgment standard of proof . . ., we protect the plaintiff[ ] from having to put on [its] case simply to establish jurisdiction." *Miranda*, 133 S.W.3d at 228 (internal quotations omitted) (internal citations omitted); *see also* Tex. R. Civ. P. 166a(c).

"implicates both the subject matter jurisdiction of the court and the merits of the case." *Miranda*, 133 S.W.3d at 226.

We take as true all evidence favorable to the nonmovant and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 226. If the defendant establishes that the trial court lacks jurisdiction, the plaintiff is then required to show that there is a material fact question about jurisdiction. *Id.* at 227–28. If the evidence raises a fact issue regarding jurisdiction, the plea must be denied pending resolution of the fact issue by the fact finder. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015) (citing *Miranda*, 133 S.W.3d at 227–28). If, on the other hand, the evidence is undisputed or fails to raise a question of fact, the plea to the jurisdiction must be determined as a matter of law. *Id.* (citing *Miranda*, 133 S.W.3d at 228).

### 2. Immunity

Unless waived, governmental immunity protects political subdivisions of the state, such as cities and their officers, from suit and liability.[10] *Chambers-Liberty Counties Navigation Dist.*, 575 S.W.3d at 344; *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 157 (Tex. 2016); *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Governmental immunity is a fundamental principle of Texas law, intended "to shield the public from the costs and consequences of improvident actions of their governments." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Governmental immunity deprives a trial

---

[10] "Official-capacity suits . . .'generally represent only another way of pleading an action against an entity of which [the official] is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). A suit brought against an employee in his official capacity "actually seeks to impose liability against the governmental unit rather than on the individual specifically named" and "is, in all respects other than name, . . . a suit against the entity." *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007).

12

court of subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *City of Houston v. Houston Mun. Employees Pension Sys.*, 549 S.W.3d 566, 575 (Tex. 2018) (citing *Reata Constr. Corp*, 197 S.W.3d at 374); *Miranda*, 133 S.W.3d at 225–26.

The Texas Supreme Court, however, has recognized that "immunity does not bar a suit in at least two circumstances relevant to appellants' claims: (1) when the suit seeks to determine or protect a party's rights against a government official who has acted without legal or statutory authority—commonly referred to as an *ultra vires* claim; or (2) when the suit challenges the validity of a statute." *Tex. Transp. Comm'n v. City of Jersey Vill.*, 478 S.W.3d 869, 875 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

In this case, appellants argue that Mayor Turner is not immune from suit under the first circumstance. Appellants further contend the City is not immune under the second circumstance because it is a necessary party under the Uniform Declaratory Judgments Act ("the UDJA"). *See* Tex. Civ. Prac. & Rem. Code § 37.002, *et seq*. Each exception to immunity is discussed below.

### 3. SUITS ALLEGING *ULTRA VIRES* CLAIMS

An *ultra vires* claim against a government official–that is, a suit against a government official for acting outside his or her authority and seeking to require the official to comply with statutory or constitutional provisions–is not barred by immunity. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009); *Turner v. Robinson*, 534 S.W.3d 115, 125–26 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Lazarides v. Farris*, 367 S.W.3d 788, 800 (Tex. App.—Houston [14th Dist.] 2012, no pet.). An *ultra vires* claim cannot be asserted against a governmental entity but must instead be brought against a government official or employee of a governmental entity. *See Heinrich*, 284 S.W.3d at 372–73. "The

13

basic justification for this *ultra vires* exception to [governmental] immunity is that *ultra vires* acts—or those acts without authority—should not be considered acts of the [the entity] at all." *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). "Consequently, '*ultra vires* suits do not attempt to exert control over the [governmental entity] — they attempt to reassert the control of the [governmental entity]' over one of its agents." *Id*. (quoting *Heinrich*, 284 S.W.3d at 372).

To fall within this *ultra vires* exception to governmental immunity, "a suit must not complain of a government [official's] exercise of discretion, but rather must allege, and ultimately prove, that the [official] acted without legal authority or failed to perform a purely ministerial act." *Heinrich*, 284 S.W.3d at 372.

Because an *ultra vires* suit is, for all practical purposes, a suit against the governmental entity, relief is limited. *Heinrich*, 284 S.W.3d at 374. Therefore, a plaintiff alleging an *ultra vires* claim cannot recover retrospective monetary relief, but is instead limited to prospective declaratory and injunctive relief. *Lazarides*, 367 S.W.3d at 800, 805. "As *Heinrich* made clear, immunity for an *ultra vires* act is only a waiver with regard to bringing future acts into compliance with the law." *City of Galveston v. CDM Smith, Inc.*, 470 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (citing *Heinrich*, 284 S.W.3d at 374).

### 4. SUITS CHALLENGING THE VALIDITY OF A STATUTE

The UDJA is a remedial statute designed to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, or other legal relations." *Heinrich*, 284 S.W.3d at 370; *see* Tex. Civ. Prac. & Rem. Code § 37.002(b). The UDJA does not enlarge a trial court's jurisdiction, and a party's request for declaratory relief does not alter the suit's underlying nature. *See Heinrich*, 284 S.W.3d at 370. Private parties cannot circumvent governmental immunity by characterizing a suit for money damages as a claim for declaratory relief. *See*

14

*Heinrich*, 284 S.W.3d at 371; *see also Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 856 (Tex. 2002) (noting that a party cannot circumvent the State's sovereign immunity by characterizing a suit for money damages as a declaratory judgment claim).

However, "the state may be a proper party to a declaratory judgment action that challenges the validity of a statute." *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011); *see also Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633, 634 n. 4 (Tex. 2010) ("[W]hen the validity of ordinances or statutes is challenged, the [U]DJA waives immunity to the extent it requires relevant governmental entities be made parties.") (emphasis in original); *City of McKinney v. Hank's Rest. Group, L.P.*, 412 S.W.3d 102, 112 (Tex. App.—Dallas 2013, no pet.) ("To summarize, the Declaratory Judgments Act waives governmental immunity against claims that a statute or ordinance is invalid. The Act does not waive immunity against claims seeking a declaration of the claimant's statutory rights or an interpretation of an ordinance.") (citation omitted).

## B.     GOVERNMENTAL IMMUNITY BARS APPELLANTS' CLAIMS

Appellants assert *ultra vires* claims against Mayor Turner for violating Tex. Family Code § 6.204(c)(2); however, they seek injunctive relief requiring both Mayor Turner and the City 1) to "comply with section 6.204(c)(2) of the Texas Family Code" [by ordering the mayor to withdraw spousal benefits from all City employees] and 2) to "claw back" public funds allegedly spent on spousal benefits to same-sex married couples.

Appellants also seek declaratory relief against both Mayor Turner and the City.

15

### 1. GOVERNMENTAL IMMUNITY BARS APPELLANTS' CLAIMS AND INJUNCTIVE RELIEF AGAINST THE CITY

#### a. *ULTRA VIRES* CLAIMS PROHIBITED AGAINST THE CITY

To the extent any part of appellants' amended petition may be interpreted as lodging *ultra vires* claims against the City, these claims are foreclosed. As set forth, *supra*, an *ultra vires* claim cannot be asserted against a governmental entity but must instead be brought against a government official or employee of a governmental entity. *See Heinrich*, 284 S.W.3d at 372–73. As applied to this case, the Texas Supreme Court reaffirmed this principle of law stating that, "unlike the Mayor . . . the City is not a proper party to an ultra-vires claim." *Pidgeon v. Turner*, 538 S.W.3d at 88 (citing *Heinrich*, 284 S.W.3d at 372–73). Pursuant to *Heinrich* and the law of this case,[11] we hold the City is immune from any alleged *ultra vires* claim.

#### b. THE CITY'S IMMUNITY IS NOT WAIVED BY ASSERTION OF CLAIMS UNDER THE UDJA

The UDJA does not provide a separate basis for standing since it is "merely a procedural device for deciding cases already within a court's jurisdiction." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). Moreover, the UDJA does not confer jurisdiction where none exists. *See IT-Davy*, 74 S.W.3d at 855 (the UDJA "does not extend a trial court's jurisdiction, and a litigant's request for declaratory relief does not confer jurisdiction on a court or change a suit's underlying nature.").

"The central test for determining jurisdiction is whether the 'real substance' of the plaintiff's claims falls within the scope of a waiver of immunity from suit."

---

[11] "The 'law of the case' doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006) (quoting *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986)).

*Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 389 (Tex. 2011). "While the [U]DJA waives sovereign immunity for certain claims, it is not a general waiver of sovereign immunity." *Id*. at 388. "Consequently, sovereign immunity will bar an otherwise proper [U]DJA claim that has the effect of establishing a right to relief against the State for which the Legislature has not waived sovereign immunity." *Id*.

As discussed above, it is well-settled that *ultra* vires suits cannot be brought against the City, but must be brought against the government official in their official capacity. *See Heinrich*, 284 S.W.3d at 380. Thus, appellants' assertion of claims against the City under the UDJA does not waive City's immunity against *ultra vires* claims.

Although the UDJA itself waives a city's immunity for claims challenging the validity of its "ordinance[s] or franchise[s]," appellants assert no such claims in this case. *See Heinrich*, 284. S.W.3d at 373 n.6; *see also* Tex. Civ. Prac. & Rem. Code § 37.006(b). Appellants, in their amended petition, request declarations to address violations of state law;[12] none challenge a statute or ordinance. Because appellants seek only to enforce existing law, this exception to governmental immunity is not available. *See Heinrich*, 284 S.W.3d at 372. We reject appellants' attempts to recharacterize their claims as constitutional challenges to existing legislative acts to save those claims from the City's immunity bar. Mayor Parker's discretionary act, made on advice of the city attorney, was not legislative, and thus does not represent a "municipal ordinance or franchise," nor a "statute," and, thus, is not subject to Section 37.006(b). *See Univ. Scholastic League v. Sw. Officials*

---

[12] Despite the U.S. Supreme Court's holdings in *Windsor, Obergefell, Pavan,* and *Bostock*, discussed *infra*, the declaratory relief sought by appellants in this case presumes that Section 22 of the Houston City Charter, Section 6.204(c) of the Texas Family Code and Article I, Section 32 of the Texas Constitution remain valid and enforceable. We disagree.

17

*Ass'n, Inc.*, 319 S.W.3d 952, 965 (Tex. App.—Austin 2010, no pet.). "[A] party cannot circumvent governmental immunity by characterizing a suit for money damages as a claim for declaratory judgment." *See City of Dallas v. Albert*, 345 S.W.3d 368, 378 (Tex. 2011) (analyzing whether UDJA waived a municipality's immunity); *City of Houston v. Williams*, 216 S.W.3d 827, 828–29 (Tex. 2007) (per curiam).

Consequently, immunity bars appellants' UDJA claims against the City.

### 2. GOVERNMENTAL IMMUNITY BARS APPELLANTS' SUIT AGAINST MAYOR TURNER

Mayor Turner is shielded from suit and liability by governmental immunity unless appellants can demonstrate immunity has been waived. *See Chambers-Liberty Cntys. Navigation Dist.*, 575 S.W.3d at 344. As set forth above, to fall within this *ultra vires* exception to governmental immunity, appellants must allege, and ultimately prove, that Mayor Turner acted *without legal authority* or failed to perform a *purely ministerial act*. *See Heinrich*, 284 S.W.3d at 372.

Jurisdiction is determined at the time suit is filed in the trial court. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 n.9; *see Grupo Dataflux v. Atlas Global Group*, 541 U.S. 567, 570 (2004) ("The jurisdiction of the Court depends on the state of things at the time of the action brought. This time-of-filing rule is hornbook law . . . .").

In their brief appellants assert that the trial court "had jurisdiction over those claims when this suit was filed in *2013*" and cites to the original petition –trial court No. 2013-75301, which was dismissed on May 9, 2014. This case began on October 22, 2014 – trial court No. 2014-61812. Thus, the relevant date for jurisdiction to be determined is October 22, 2014.

18

### a. MAYOR PARKER'S DIRECTIVE WAS A DISCRETIONARY ACT AND, THUS, COULD NOT BE *ULTRA VIRES*

One method to waive immunity as *ultra vires* is to plead and prove that the government official "failed to perform a purely ministerial act." *Heinrich*, 284 S.W.3d at 372. "Ministerial acts are those 'where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.'" *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015) (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex.1994)). "Discretionary acts on the other hand require the exercise of judgment and personal deliberation." *Emmett*, 459 S.W.3d at 587.

Here, appellants do not plead or dispute that Mayor Parker failed to perform a purely ministerial act. Appellants also do not contest by pleading or otherwise that under the Houston City Charter, art. VI, § 7a, the Mayor of the City of Houston has the authority to enforce laws and ordinances and to prescribe rules governing each department "necessary or expedient for the general conduct of the administrative department." Further, appellants do not plead or dispute that Mayor Parker's decision to interpret extrinsic law as requiring the City to continue to provide spousal benefits to same-sex spouses of city employees on an equal basis falls within Mayor Parker's discretion under the Houston City Charter. In fact, in their amended petition, appellants allege that Mayor Parker and city officials "disregard[ed] state law merely because it conflicts with their personal beliefs of what the U.S. Constitution or federal law requires." In so doing, appellants concede Mayor Parker's directive and its implementation was a discretionary act.

We conclude appellants have failed to both plead and establish a waiver of immunity based on the Mayor Parker's failure to perform a purely ministerial act. *See Emmett*, 459 S.W.3d at 587. Thus, there is no waiver of governmental immunity on this basis.

### b. FAILURE TO PLEAD OR PROVE MAYOR PARKER ACTING "WITHOUT LEGAL AUTHORITY" IN OCTOBER 2014

Another method of waiving governmental immunity is to assert an *ultra vires* claim based on actions taken "without legal authority." *Heinrich*, 284 S.W.3d at 372. To assert an *ultra vires* claim under this approach, appellants had to plead and prove two elements: "(1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *McRaven*, 508 S.W.3d at 239.

Appellants fail to plead and prove that Mayor Parker acted outside of her legal authority. Indeed, the events occurring in October 2014 prove just the opposite–that Mayor Parker's actions were within her authority. At that time, a section of the federal DOMA had been struck down by *Windsor*. *See* 570 U.S. at 774–75. Additionally, although not binding, but offering persuasive authority, the State of Texas was appealing an injunction enjoining the State "from enforcing Article I, Section 32 of the Texas Constitution, any related provisions in the Texas Family Code, and any other laws or regulations prohibiting a person from marrying another person of the same sex or recognizing same-sex marriage." *DeLeon v. Perry*, 975 F. Supp.2d 632, 666 (W.D. Tex. 2014) (Garcia, J.), *aff'd sub nom.*, *DeLeon v. Abbott*, 791 F.3d 619 (5th Cir. 2015).[13] Federal district Judge Orlando Garcia, however, stayed execution of the February 26, 2014 injunction, allowing the State to appeal to the Fifth Circuit Court of Appeals. *Id.*

---

[13] While the appeal was under submission, in June 2015, the U.S. Supreme Court decided *Obergefell v. Hodges*, 576 U.S. 644 (2015), which held that "same sex couples may exercise their fundamental right to marry in all States," and that "that there is no lawful basis for a State to refuse to recognize a lawful same-sex marriage performed in another State on the ground of its same-sex character." *Obergefell*, 576 U.S. at 681. The parties in *DeLeon* agreed that the injunction appealed was correct in light of *Obergefell* and on July 1, 2015, the Fifth Circuit affirmed the district court's preliminary injunction. *DeLeon*, 791 F.3d. at 624-25.

Further, at the time suit was filed, the City of Houston was specifically enjoined from discontinuing the spousal benefits appellants challenge here. On August 29, 2014, federal district Judge Sim Lake entered a preliminary injunction order "preserving the status quo and enjoining the City of Houston from discontinuing spousal employment benefits to same-sex spouses of City employees until such time as final judgment is entered in this case or it is dismissed." *See Freeman v. Parker*, Case No. 4:13-cv-3755 (S.D. Tex. Aug. 29, 2014) (Lake, J.) ("*Freeman* Injunction"). The *Freeman* injunction stayed the proceedings "pending final resolution of the constitutionality of the Texas marriage ban in *DeLeon v Perry*." *See id*. At the time this suit was filed, the *Freeman* injunction was in effect, as it had neither been stayed, reversed, or lifted.

Under these circumstances, Mayor Parker's actions in October 2014– continuing to provide spousal benefits to all spouses of city employees on an equal basis–were authorized and, thus, not *ultra vires*. Because appellants have failed to demonstrate a fundamental component of their assertion that on October 22, 2014, Mayor Parker acted "without legal authority," governmental immunity has not been waived. *See McRaven*, 508 S.W.3d at 239.

### c. ALTERNATIVELY, MAYOR PARKER'S INTERPRETATION OF EXTRINSIC LAW, EVEN IF MISTAKEN, IS NOT *ULTRA VIRES*

The standard for an *ultra vires* act is whether it was done without legal authority, not whether it was correct. *See McRaven*, 508 S.W.3d at 243.

Appellants argue that the federal courts have no jurisdiction to intrude upon state-court rulings and that the *Freeman* injunction was void. Even assuming, *arguendo*, that Mayor Parker was wrong in relying upon federal authority (*e.g.*, *Windsor*, the Constitution, the Equal Protection and Due Process clauses, the *Freeman* injunction, and the federal district court's *De Leon* decision), the city

attorney's legal opinion, and the then-existing persuasive authority overturning as unconstitutional the denial of full rights, benefits, and marital status to same-sex spouses and couples, Mayor Parker's continuing directive and actions to offer spousal employment benefits to same-sex spouses of city employees would still not have been *ultra vires* acts in October 2014 or thereafter.

In *McRaven*, the Texas Supreme Court held that even serious mistakes by government officials in interpreting extrinsic law cannot not be considered *ultra vires* acts for waiver of immunity purposes. 508 S.W.3d at 242–43. Instead, "only when these improvident actions are unauthorized does an official shed the cloak of the sovereign and act *ultra vires*." *Id*. at 243.

> When the ultimate and unrestrained objective of an official's duty is to interpret collateral law, a misinterpretation is not overstepping such authority; it is a compliant action even if ultimately erroneous. Our intermediate courts of appeals have repeatedly stated that it is not an *ultra vires* act for an official or agency to make an erroneous decision while staying within its authority . . . . As important as a mistake may be, sovereign immunity comes with a price; it often allows the 'improvident actions' of the government to go unredressed. Only when these improvident actions are unauthorized does an official shed the cloak of the sovereign and act *ultra vires*.

*Id*. Thus, even if the Mayor misinterpreted the extrinsic law, this mistake would not waive the Mayor's immunity under the *ultra vires* exception.

Although appellants attempt to limit *McRaven* to officials who enjoy absolute authority, the Texas Supreme Court did not. While McRaven himself enjoyed broad authority, that decision requires only a showing that the official enjoys "some (but not absolute) discretion to act." *McRaven*, 508 S.W.3d at 239. As set forth above, in this case, appellants failed to plead and show that any Houston mayor lacked the authority to make enforcement decisions or to interpret extrinsic law. Appellants argue, instead, that Mayor Parker acted without legal

authority because in issuing her directive she did not follow *Baker v. Nelson*, 409 U.S. 810 (1972), *overruled by Obergefell*, 576 U.S. at 675.[14]

In October 2014, the precedential value of *Baker* was being called into doubt due to the "doctrinal developments" in the Supreme Court's equal protection jurisprudence in the forty years after *Baker*. *See De Leon*, 975 F. Supp. 2d at 647–48 (examining cases). The doctrinal developments include the 2013 decision by the U.S. Supreme Court in *Windsor*. *See Windsor v. United States*, 699 F.3d 169, 178–79 (2d Cir. 2012) (calling *Baker* into doubt), *aff'd*, 570 U.S. 744 (2013) (citation omitted). Thus, we reject appellants' contention that the Mayor was without legal authority to interpret extrinsic law to conclude that providing same-sex spouses with access to spousal benefits was legally required.

<blockquote>

**d.** **ALTERNATIVELY, APPELLANTS HAVE NOT PLEADED AND CANNOT ESTABLISH THAT MAYOR PARKER WAS ACTING "WITHOUT LEGAL AUTHORITY" IN OCTOBER 2014 WHEN MAYOR PARKER DECLINED TO ENFORCE STATE AND LOCAL LAWS THAT WERE UNCONSTITUTIONAL AND UNENFORCEABLE**

</blockquote>

Even if affording spousal benefits to same-sex spouses of city employees was not mandated by the *Freeman* injunction in August 2014, the Mayor's directive and its implementation were discretionary actions, as set forth *supra*, within the Mayor's powers afforded to her under the Houston City Charter and Mayor Parker's decision was based on well-grounded legal authority, at the time suit was filed, if not before.

---

[14] In 1972, the U.S. Supreme Court summarily dismissed for want of substantial federal question an appeal from a Minnesota Supreme Court decision finding no right to same-sex marriage as violative of due process and equal protection rights under the Fourteenth Amendment. *Baker v. Nelson*, 291 Minn. 310, 313, 191 N.W.2d 185, 187 (1971), *appeal dismissed*, 409 U.S. 810 (1972), *overruled by Obergefell*, 576 U.S. at 675. "*Baker v. Nelson* must be and now is overruled, and the State laws challenged by Petitioners in these cases are now held invalid to the extent they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples." *Obergefell*, 576 U.S. at 675.

Appellants' claims, therefore, do not fall into the *ultra vires* exception to governmental immunity.

        **e.**    **APPELLANTS HAVE NOT PLEADED AND CANNOT ESTABLISH THAT EITHER MAYOR PARKER OR MAYOR'S TURNER'S CONTINUATION OF THE DIRECTIVE TO PROVIDE SPOUSAL EMPLOYMENT BENEFITS TO SAME-SEX SPOUSES OF CITY EMPLOYEES IS "WITHOUT LEGAL AUTHORITY"**

Through a series of opinions following *Windsor*,[15] the U.S. Supreme Court has made clear that the Due Process and Equal Protection Clauses require States to grant same-sex married couples the same legal rights, benefit, and responsibilities as different-sex married couples. Although appellants argue that we should apply these decisions retroactively, we decline to do so because appellants' contention is inconsistent with our requirement under the law to apply U.S. Supreme Court precedent to cases pending on appeal. *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 96–97 (1993) (explaining "a decision extending the benefit of the judgment to the winning party is to be applied to other litigants whose cases were not final at the time of the first decision . . . whether such event predate or postdate our announcement" of the decision) (quotation and alteration omitted). This case is not final and, as such, we follow the Supreme Court's holdings in *Obergefell, Pavan, and Bostock* in reaching our decision.

*Obergefell v. Hodges*

In 2015, the U.S. Supreme Court concluded that the state DOMAs at issue violated the Due Process and Equal Protection Clauses of the Fourteenth

---

[15] The U.S. Supreme Court in *Windsor* observed the fact that DOMA "reject[ed] the long-established precept that the incidents, benefits, and obligations of marriage are uniform for all married couples within each State, though they may vary . . . from one State to the next." 570 U.S. at 768. The Court further expounded that the "create[ion of] two contradictory marriage regimes within the same State" impermissibly "place[d] same-sex couples in an unstable position of being in a second-tier marriage" and "wr[o]te[] inequality into the entire United States Code." *Id*. at 771–72.

Amendment and, based on that conclusion, the Court held states may not "exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples" and may not "refuse to recognize a lawful same-sex marriage performed in another State on the ground of its same-sex character." *Obergefell v. Hodges*, 576 U.S. 644, 675, 681 (2015).

While the Court recognized that a state is free to decide in the first instance what benefits flow from marriage, once that question is decided, Due Process and Equal Protection Clauses preclude states from denying married same-sex couples the "constellation of benefits that States have linked to marriage." *See Obergefell*, 576 U.S. at 646–47. Those material benefits include employment benefits. *See id*. at 670. The Court in *Obergefell* explained:

> The States have contributed to the fundamental character of the marriage right by placing that institution at the center of so many facets of the legal and social order.
>
> There is no difference between same- and opposite-sex couples with respect to this principle. Yet by virtue of their exclusion from that institution, same-sex couples are denied the constellation of benefits that the States have linked to marriage. This harm results in more than just material burdens. Same-sex couples are consigned to an instability many opposite-sex couples would deem intolerable in their own lives. As the State itself makes marriage all the more precious by the significance it attaches to it, exclusion from that status has the effect of teaching that gays and lesbians are unequal in important respects. It demeans gays and lesbians for the State to lock them out of a central institution of the Nation's society. Same-sex couples, too, may aspire to the transcendent purposes of marriage and seek fulfillment in its highest meaning.

> The limitation of marriage to opposite-sex couples may long have seemed natural and just, but its inconsistency with the central meaning of the fundamental right to marry is now manifest. With that knowledge must come the recognition that laws excluding same-sex couples from the marriage right impose stigma and injury of the kind prohibited by our basic charter.

*Id.* at 670–71.

Nevertheless, appellants urge us to enforce a law providing for marriage on separate terms and conditions as applied to employment benefits: one for different-sex couples that includes benefits and one for same-sex couples that excludes them. Because appellants' attempt to prevent the City from offering employment benefits to married same-sex couples on the same terms and conditions as married different-sex couples cannot be reconciled with the requirements of the U.S. Constitution; we reject it.

*Pavan v. Smith*

Two years later, in 2017, the Court addressed an Arkansas law that listed a birth mother's different-sex spouse on their child's birth certificate, but not a birth mother's same-sex spouse. *See Pavan v. Smith*, — U.S. —, 137 S. Ct. 2075, 2078 (2017) (per curiam). The Arkansas Supreme Court held that *Obergefell* did not apply, but the U.S. Supreme Court disagreed and summarily reversed. The U.S. Supreme Court held that under the challenged law, "same-sex parents in Arkansas lack the same right as opposite-sex parents to be listed on a child's birth certificate." *Id*. The Court reiterated its holding that *Obergefell* "proscribes such disparate treatment." *Id*. "Indeed, in listing those terms and conditions–the 'rights, benefits, and responsibilities' to which same-sex couples, no less than opposite-sex couples, must have access," was "no accident." *Id*.; *see Treto v. Treto*, No. 13-18-00219-CV, — S.W.3d — , 2020 WL 373063, at *4 (Tex. App.—Corpus Christi Jan. 23, 2020, no. pet. h.) ("Accordingly, it follows that under *Pavan*, we are to

26

give effect to the ancillary benefits of a same-sex marriage, including [application of the marital presumption equally to] the non-gestational spouse of a child born to the marriage.").

*Bostock v. Clayton Cnty, Ga.*

While the prior federal cases relied upon by the trial court focus on the equal protection and due process violations that would attend denying same-sex spouses access to city benefits, last year, in 2020, the U.S. Supreme Court provided an additional ground to hold that denying benefits to same-sex spouses of city employees would be improper: because it would likely violate the Civil Rights Act of 1964. *See Bostock v. Clayton Cnty., Ga.*,— U.S. — , 140 S. Ct. 1731, 1737 (2020).

In *Bostock,* the Court reviewed three cases challenging the employment termination of individuals based upon their sexual orientation or gender identity and held that such terminations violated Title VII of the Civil Rights Act. *See Bostock*, 140 S. Ct. at 1737. The Court explained:

> Today, we must decide whether an employer can fire someone simply for being homosexual or transgender. The answer is clear. An employer who fires an individual for being homosexual or transgender fires that person for traits or actions it would not have questioned in members of a different sex. Sex plays a necessary and undisguisable role in the decision, exactly what Title VII forbids.

*Id*. These same reasons would also prohibit enforcing Texas DOMAs and the discriminatory law appellants seek to advance.

In sum, there can be no uncertainty as to the propriety and legality of affording spousal benefits equally to all married City employees under *Windsor, Obergefell, Pavan,* and *Bostock*. The U.S. Supreme Court rulings in these cases

support the trial court's ruling here that the Mayor and the City have not committed any *ultra vires* or impermissible act.

### f. NO BASIS TO ELIMINATE SPOUSAL BENEFITS FOR ALL CITY EMPLOYEES

Although appellants did not plead that the Mayor is committing an *ultra vires* act by declining to withdraw spousal benefits from all spouses of City employees in alleged defiance of § 6.204(c)(2), they argued it in their summary judgment and now on appeal. Appellants argue that if *Obergefell* and *Pavan* require Houston to pay equal spousal benefits to all married couples, the only way to reconcile these decisions with Texas Family Code § 6.204(c)(2) is for the City to withdraw spousal benefits for all municipal employees. Appellants contend this would ensure equal treatment and be compliant with Section 6.204(c)(2) of the Texas Family Code.

Appellants' argument presupposes that the City providing employee benefits for married same-sex couples has been compelled by the federal government to do so. Appellants argue that spousal employment benefits are a "taxpayer-funded gratuity" that is "entirely different from the licensing and recognition of marriage. Appellants analogize this to *Harris v. McRae*, where the U.S. Supreme Court held that, "[a]lthough the liberty protected by the Due Process Clause affords protection against unwarranted government interference with freedom of choice in the context of certain personal decisions, it does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom." 448 U.S. 297, 317–18 (1980). Appellants' argument misstates the holding in *Obergefell*. States are not required to subsidize marriage. *See Obergefell*, 576 U.S. at 669–70 ("[T]he States are in general free to vary the benefits they confer on all married couples . . . ."). However, once a state decides to grant certain benefits as an incident of marriage, it must grant that benefit to all married couples, regardless of

28

sex. *See Windsor*, 570 U.S. at 772 (placing same-sex couples in a "second-tier marriage" without federal benefits "demeans the couple, whose moral and sexual choices the Constitution protects"). Further, while the State might be able to condition certain benefits on Medicare eligibility or tobacco use without running afoul of *Obergefell*, it may not condition those benefits on whether the marriage is between a same-sex or different-sex couple.

Appellants' contention that the State can refuse to provide same-sex couples the same benefits as different-sex couples based on its interest in furthering procreation and child-rearing was rejected in *Obergefell*. *See* 576 U.S. at 679. In *Obergefell,* the court concluded that excluding same-sex couples from the protections of marriage would hinder a state's interest in childrearing, procreation, and education. *See id*. at 668–69 ("Without the recognition, stability, and predictability marriage offers, their children suffer the stigma of knowing their families are somehow lesser . . . . The marriage laws at issue here thus harm and humiliate the children of same-sex couples."); *see also Windsor*, 570 U.S. at 773 ("DOMA also brings financial harm to children of same-sex couples.").

Finally, to the extent that appellants suggest that their interest in religious liberty "weighs heavily" against treating same-sex and different-sex couples the same, appellants' contention is foreclosed. The City is not a religious organization and "[t]he Constitution . . . does not permit the State to bar same-sex couples from marriage on the same terms as accorded to couples of the opposite sex," despite any individual person's religious disagreement. *Obergefell*, 576 U.S. at 679–80. Moreover, appellants' reliance on *Burwell v. Hobby Lobby Stores*, which was brought under the Religious Freedom Restoration Act ("RFRA") and addressed whether the contraceptive mandate in the Affordable Care Act substantially burdened private employers' "religious exercise," is misplaced, because it is not

29

analogous. *See* 573 U.S. 682 (2014). Moreover, RFRA has a statutory standing provision that does not apply to state *ultra vires* claims. *See* 42 U.S.C. § 2000bb-1(c) (West 2019).

Appellants neither plead nor provide proof that Mayor Turner is committing an *ultra vires* act by declining to withdraw spousal benefits from all spouses of city employees. Additionally, appellants provide no basis to strip spousal benefits from all employees of the City. Appellants' arguments are merely attempting to relitigate that which has been foreclosed by *Obergefell* and subsequent U.S. Supreme Court cases that we are bound to follow.[16]

### 3. APPELLANTS NOT ENTITLED TO INJUNCTIVE RELIEF

In their amended petition, appellants sought both temporary and permanent injunctive relief. Specifically, appellants sought to enjoin "the mayor and the city to comply with section 6.204(c)(2) of the Texas Family Code."

#### a. STANDARD OF REVIEW AND GOVERNING LAW

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Id.* "To obtain a temporary injunction, the applicant must plead and prove three elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable,

---

[16] We take judicial notice that after *Obergefell* was decided, on July 1, 2015, the Fifth Circuit upheld a lower court's ruling enjoining the State from enforcing the provisions in the Texas Constitution and the Family Code, or any other laws or regulations, that prohibit "a person from marrying another person of the same sex or recognizing same-sex marriage." *De Leon v. Abbott*, 791 F.3d 619, 624–25 (5th Cir. 2015). In so doing, the Fifth Circuit noted that "both sides now agree" that "the injunction appealed from is correct in light of *Obergefell*." *Id*. at 625. Additionally, we take judicial notice that the State now follows *Obergefell* in providing employee benefits to same-sex spouses of state employees. *See, e.g.*, https://www.ers.texas.gov/PDFs/Dependent-eligibility-chart (accessed March 29, 2021).

imminent, and irreparable injury in the interim." *Id.* Similarly, an applicant seeking permanent injunctive relief must demonstrate: (1) a wrongful act; (2) imminent harm; (3) irreparable injury; and (4) the absence of an adequate remedy at law. *See Messier v. Messier*, 389 S.W.3d 904, 908 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

"An applicant for injunction must establish its probable right to recovery and a probable injury by competent evidence adduced at a hearing." *Ron v. Ron*, 604 S.W.3d 559, 568 (Tex. App.—Houston [14th Dist.] 2020, no pet.). "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204; *accord Cheniere Energy, Inc. v. Parallax Enters. LLC*, 585 S.W.3d 70, 76 (Tex. App.—Houston [14th Dist.] 2019, pet. dism'd).

The decision to grant or deny a temporary injunction lies in the sound discretion of the trial court, and the court's grant or denial is subject to reversal only for a clear abuse of that discretion. *Butnaru*, 84 S.W.3d at 204; *see Wiese v. Heathlake Cmty. Ass'n, Inc.*, 384 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("We review a trial court's decision to grant or deny a permanent injunction for an abuse of discretion."). A trial court does not abuse its discretion if it applies the law correctly and some evidence reasonably supports its ruling. *See Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020). We view the evidence in the light most favorable to the trial court's decision. *Wash. DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 740 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (en banc).

### b. FAILURE TO ESTABLISH REQUISITE ELEMENTS

Appellants fail to plead or establish the elements required to obtain any temporary or permanent injunctive relief.

### i. NO PROBABLE, IRREPARABLE INJURY, OR IMMINENT HARM

Appellants have not pleaded that they will suffer a probable, irreparable injury or any imminent harm. Indeed, appellants have not pleaded any imminent consequence that will flow from the City's continued provision of spousal benefits to same-sex spouses. Rather appellants alleged only that they regard same-sex relationships "as immoral and sinful, in violation of their sincerely held religious beliefs" and, therefore, are harmed because they believe their tax dollars have been "compelled to subsidize homosexual relationship." Appellants, however, make no effort to show that such allegations are sufficient, as a matter of law, to demonstrate probable, irreparable injury or imminent harm. As such, appellants' request for injunctive relief was properly dismissed.

### ii. NO PROBABLE RIGHT TO RECOVERY

As set forth, *supra*, appellants also could not show a probable right to recovery or any wrongful act by Mayor Parker, Mayor Turner, or the City, which is an essential requirement to obtain the injunctive relief requested.

### iii. PURPOSE OF PRESERVING STATUS QUO NOT MET

The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204. The status quo here is the City's continuing to offer equal benefits to all spouses of city employees. Instead of preserving the status quo, the requested injunctive relief would dramatically disrupt the status quo, and provide appellants essentially all relief appellants would be entitled to if they prevailed on final judgment. *See Tex. Foundries, Inc. v. Int'l*

*Molders & Foundry Workers' Union*, 248 S.W.2d 460, 464 (Tex. 1952) ("It is settled law that a court will not decide disputed ultimate fact issues in a hearing on an application for a temporary injunction; nor will a temporary injunction issue if the applicant would thereby obtain substantially all the relief which is properly obtainable in a final hearing."). Appellants cannot show a preservation of status quo element, which is a requirement for the injunctive relief sought.

Appellants' issues I, II, III, IV, V, and VI are overruled.

## C.  APPELLANTS FAILED TO ESTABLISH STANDING TO ORDER THE CITY AND MAYOR TO "CLAW BACK" ANY PUBLIC FUNDS SPENT IN THE PAST

Appellants also seek a "temporary and permanent injunction requiring the mayor and the city to claw back all public funds that they illegally spent on spousal benefits for the homosexual partners of city employees." It is unclear what appellants mean by the phrase "claw back." Appellants do not identify what funds would have to be recovered by the City and from whom reimbursement would have to be sought. Appellants also do not indicate if monies are to be sought from and reimbursed by third-party insurers, beneficiaries, or City employees themselves.

Appellants have not shown they have standing to seek or that the court has jurisdiction to order, a "claw back" or other recoupment. A cause of action to recover public funds improperly or illegally spent belongs exclusively to the governmental entity that spent them. *See Blue*, 34 S.W.3d 547, 556 (Tex. 2000). Consequently, appellants have no standing to pursue a claim for recoupment as that claim belongs to the City. Their demand for a "claw back" remedy was, therefore, properly dismissed.

Additionally, as analyzed, *supra*, appellants are not entitled to any injunctive relief from the City for an *ultra vires* claim from which the City is immune.

Moreover, even if appellants could sue the City for alleged *ultra vires* acts by the Mayor, it is well-settled that, when plaintiffs assert only *ultra vires* claims, only prospective injunctive relief, measured from the date of the injunction, is available. *See Heinrich*, 284 S.W.3d at 380; *Sefzik*, 355 S.W.3d at 621. Consequently, appellants lack standing to request the trial court to impose retrospective monetary relief ordering any "claw back" of public funds already spent. *See Lazarides*, 367 S.W.3d at 800, 805.

Alternatively, appellants lack standing as taxpayers to seek "claw back" of public funds already spent. To establish standing as taxpayers, appellants cannot merely state residential addresses within the City, they must show that 1) they actually pay property taxes in the City,[17] and 2) there has been an actual, measurable expenditure of public funds on the allegedly illegal activity that is more than *de minimis*. *Andrade v. Venable*, 372 S.W.3d 134, 136 (Tex. 2012). Even assuming, *arguendo*, that appellant could establish the first element–that they are taxpayers in Houston, they cannot demonstrate the second element–any illegal City expenditures. As demonstrated above, Mayor Parker's actions were not illegal on the date this lawsuit was filed. When this suit was filed in October 2014, provision of same-sex benefits pursuant to Mayor Parker's directive was mandated by the *Freeman* injunction. Moreover, based upon the U.S. Supreme Court's decision in *Windsor* (holding federal DOMA unconstitutional) and the persuasive federal district court opinion in *De Leon* (holding Texas DOMA unconstitutional), both decided before this lawsuit was filed in 2014, the City Attorney could reasonably have concluded and advised the Mayor that Texas DOMA was

---

[17] *See Williams v. Lara*, 52 S.W.3d 171, 179 (Tex. 2001); *see also Town of Flower Mound v. Sanford*, No. 2-07-032-CV, 2007 WL 2460329, at *3 (Tex. App.—Fort Worth Aug. 31, 2007, no pet.) (mem. op.).

unconstitutional and therefore unenforceable. Thus, appellants lacked standing, as taxpayers, to challenge Mayor Parker's *legal* actions at the time suit was filed.

Appellants' issue VII and IX are overruled.

## D. Appellants Not Entitled to Declaratory Relief

Appellants seek three declarations in their amended petition: a declaration that the Mayor's directive of November 19, 2013 violated state and City law; a declaration that the Mayor and City officials have no authority to disregard state or city law merely because it conflicts with their personal beliefs of what the U.S. Constitution or federal law requires; and a declaration that the Mayor and City are violating state law by continuing to enforce the Mayor's directive of November 19, 2013. They moved for summary judgment only on their second request; however, they are not legally entitled to any declaration as a matter of law.

Whether the Mayor or City violated state or local law in the past or is violating it now in providing spousal benefits to same-sex spouses is legally irrelevant if the City was under federal court order to do so on the date the lawsuit was filed. Whether the Mayor or City arguably violated state or local law in providing spousal benefits to same-sex spouses also is legally irrelevant if those laws were unconstitutional and unenforceable under *Windsor, De Leon*, or later *Obergefell*, *Pavan*, and *Bostock* as well as the United States Constitution.

The same is true of the completely improper proposed declaration that purports to blame the Mayor's and City's provision of spousal benefits to same-sex spouses solely on personal idiosyncrasies. Appellants have not and cannot demonstrate any legal purpose that would be served by such a declaration. Instead, it serves only as a political distraction from the federal legal authority that bound the City and Mayor as of the date this lawsuit was filed, if not before.

The uncontroverted evidence here shows that, at the time this lawsuit was filed, the City was under federal court order to maintain the status quo, the federal district court in *De Leon* had already declared Section 6.204 unconstitutional, and *Windsor* had mandated that spousal benefits offered to different-sex couples must be offered to same-sex couples on an equal basis.

Even at the time Mayor Parker issued her directive, it is undisputed that she consulted the city attorney, who interpreted *Windsor* to require the City to afford benefits to same-sex spouses. As set forth above, Mayor Parker exercised her discretion to follow the city attorney's legal advice. As such, there was no basis for ordering the declarations appellants seek.

Appellants' issue VIII is overruled.

## V. CONCLUSION

Appellants' issues on appeal are overruled. Appellants have not shown a waiver of immunity provided the trial court with jurisdiction; thus, we affirm the trial court's order granting the Mayor's and the City's plea to the jurisdiction and/or counter-motion for summary judgment.


/s/     Margaret "Meg" Poissant
        Justice


Panel consists of Justices Zimmerer, Poissant, and Wilson (Wilson, J., concurring and dissenting).